## DONNA POWLEY v. JOHN OWENS

[No. 1625, September Term, 1980.]

*Decided July 10, 1981.*

The cause was argued before GILBERT, C. J., and MOORE and WEANT, JJ.

*Fletcher P. Thompson, Assistant State's Attorney for* Dorchester County, *for* appellant.

No appearance by appellee.

GILBERT, C. J., delivered the opinion of the Court.

When Shannon Powley was born on June 22, 1978, fate threw her three fast, hard strikes. The "first strike" on Shannon was that she was born out of wedlock; the "second strike" was that her birth was premature, in that she was

delivered after a pregnancy term of five months and 22 days. As a result, Shannon was transported from Dorchester General Hospital to Sinai Hospital in Baltimore City in order to receive the medical care necessary to keep her alive. The "third strike" was that her biological father refused to pay his share, namely $8,375.49, of the medical bill which "was just short of $18,000.00." The third "strike" is vicariously on Shannon because her mother will be called upon to pay the entire bill, thus, depriving the child, at least indirectly, of the benefit that sum would have brought to the home had it not been paid to the hospital.

We are powerless to do anything with respect to the "first strike," except to note that the Legislature and the courts have made great strides toward removing the social stigma, if any, that attaches to the innocent child born out of wedlock. The two hospitals provided the medical care necessary to sustain young Shannon's life and, thereby, eradicated "strike two." The "third strike" took the form of an order signed by the Circuit Court for Dorchester County. We think that "strike" was a "bad call," and we reverse it for the reasons hereinafter set forth.

## I.

### — THE FACTS —

On August 26, 1980, the appellee was found, by a jury, in a paternity proceeding held in the circuit court, to be the father of Shannon. The appellant petitioned the circuit court to "order . . . [the appellee] to pay a substantial portion of the [hospital bill] balance." On September 25, 1980, the court denied the request but directed the appellee to pay $25 per week for Shannon's support.

## II.

### — THE ISSUES ON APPEAL —

Appellant poses two questions for our consideration:

1.  Is the father of a child, born out of wedlock,

legally required to pay for the medical costs that are incurred in order to keep the infant alive?

2. May the court require the father of such a child to pay for the lying-in expenses of the mother of the child?

## III.

### — THE LAW —

The General Assembly declared, in Laws 1963, ch. 722, § 1, now codified as Md. Ann. Code art. 16, § 66A:

"The General Assembly declares its conviction that the State has a duty to ameliorate the deprived social and economic status of children born out of wedlock and that the policies and procedures as contained in this subtitle and in § 66 of this article relative to establishing the paternity of such children, determining who shall have their custody or guardianship and who shall be charged with their maintenance and support are socially necessary and desirable, having as their threefold purpose (1) *the promotion of the general welfare and best interests of such children by securing to them, as near as practical, the same right to support, care and education as legitimate children;* (2) the imposition upon both parents of such children the basic obligations and responsibilities of parenthood and (3) the simplification of procedures." (Emphasis supplied.)

Section 66H of the same article provides in pertinent part:

"(a) . . . (1) If the court or jury . . . finds against the defendant alleged to be the putative father, the court *shall* pass an order declaring the defendant to be the father of the child and *providing for the support and maintenance of the child. . . .* (Emphasis supplied.)

. . .

(3) In addition to providing for support and maintenance of the child, the order also may require the defendant to pay all or any part of the mother's medical and hospital expense for her pregnancy, confinement, and recovery . . . and may award counsel fees to the attorney representing the complainant or petitioner. . . ."

The Court of Appeals, in *Dorsey v. English,* 283 Md. 522, 529, 390 A.2d 1133, 1138 (1978), declared that "[t]he clear intent of the statute is to impose upon both parents the *obligation* of parenthood by insuring that illegitimate children will enjoy the same right of support as legitimate children."

This Court, in *Williams v. Williams,* 18 Md. App. 353, 356, 306 A.2d 564, 566 (1973), said in *dicta* that Md. Ann. Code art. 16, §§ 66A-66P was "the exclusive basis in this State for enforcing the obligation of a putative father to support his illegitimate child."

The trial judge in the instant case brushed aside the appellant's argument with respect to the application of Md. Ann. Code art. 72A, § 1, which pertains to parent and child. The judge relied upon the *dicta* in *Williams. Id.* In so doing, he fell into error. *Williams* was written without regard to the legislative direction as to the interpretation that must be placed on the noun "child" whenever it appears in the Code. Md. Ann. Code art. 1, § 16 provides:

"The word child or its equivalent shall be construed to include any illegitimate child, except in matters of inheritance, descent or distribution of real or personal property, unless such a construction would be unreasonable."

The matter now before us concerns the question of support and maintenance of the child. Inheritance and the other testacy or intestacy exceptions found in section 16 are not involved, nor does a reading of Article 72A suggest that to interpret the word "child," as defined in Article 1, § 16, would be unreasonable.

Md. Ann. Code art. 72A, § 1 delineates the obligation of parents to their legitimate children and prescribes that "the father and mother are the joint natural guardians of their child under eighteen years of age and are jointly and severally charged with its *support, care, nurture, welfare and education.*" (Emphasis supplied.) It has been held that the provision of medical care is included within the broad statutorily defined obligation of "support, care, nurture, welfare and education." *Levitsky v. Levitsky,* 231 Md. 388, 190 A.2d 621 (1963); *Craig v. State,* 220 Md. 590, 155 A.2d 684 (1959).

Judge Thompson, for this Court in *State v. Rawlings,* 38 Md. App. 479, 481, N. 2, 381 A.2d 708, 709 (1978), called attention to the fact that in deciding that "the word child as used in Art. 72A, § 1 only referred to legitimate children," we did not consider the effect of the definition of "child" as found in Article 1, § 16.

To satisfy the legislative intent articulated in Art. 16, § 66A of "securing to . . . [illegitimate children], *as near as practical,* the same right to support, care and education as legitimate children," (Emphasis supplied.), we must conclude that the provision for medical care is implicit within the phrase "support and maintenance" as contained in Article 16, § 66H (a) (1).

Recently in *Polk v. Harris,* 46 Md. App. 591, 599, 420 A.2d 1004, 1008 (1980), we said that there is "no basis for making any differentiation between the rights of legitimate and illegitimate children as to payments for maintenance and support." To deny illegitimate children the right to receive medical care from their parents, while recognizing that legitimate children have such a right would be blatantly to ignore the equal protection guarantees of the Fourteenth Amendment as well as the numerous pronouncements by the Supreme Court of the United States. That Court has iterated and reiterated that illegitimate children must be extended the same rights as legitimate children, except where the differentiation serves a valid State purpose. *See Trimble v. Gordon,* 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d

31 (1977); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S. Ct. 1400, 31 L. Ed. 2d 768 (1972); *Levy v. Louisiana,* 391 U.S. 68, 88 S. Ct. 1509, 20 L. Ed. 2d 436 (1968).

We think Md. Ann. Code art. 16, §§ 66A-66P must be read together with Md. Ann. Code art. 72A, after applying the definition of "child" as found in Md. Ann. Code art. 1, § 16. When so read, it is clear that a child, irrespective of its legitimacy *vel non* has the right to support and maintenance from both its father and mother. To the extent that *Williams v. Williams, supra,* indicates to the contrary, it is expressly overruled.

As a further reason for reversing the judgment of the circuit court, we point directly to Md. Ann. Code art. 16, § 66H (a) (1). That section provides, in pertinent part, that if a defendant is found to be the father of a child born outside the bonds of marriage, "the court *shall* pass an order" directing the father to provide "the support and maintenance of the child." We construe the term "support and maintenance" to embrace necessary medical care and treatment. It would be foolhardy, indeed, to order a parent to provide food and shelter from the elements and, at the same time, permit the child to expire for want of medical care.

Our perusal of the record discloses that the second issue stated above was not raised and decided in the circuit court. The proceeding below was directed entirely towards the hospital expenses incurred in connection with the postnatal care of Shannon following her premature birth.

We note that Md. Ann. Code art. 16, § 66H (a) (3) confers upon the chancellor the authority to "require the defendant to pay all or any part of the mother's medical and hospital expense" incurred as a result of the "pregnancy, confinement, and recovery. . . ." The statute is couched in permissive terms, not mandatory terms as with section 66H (a) (1). The issue then would be whether the trial court abused its discretion in refusing to order the defendant to pay all or part of the hospital expenses of the mother.

The issue is, as we have said, not properly before us, and we do not decide it. Md. Rule 1085.

> *Judgment reversed and case remanded for further proceedings consistent with this opinion.*
>
> *Costs to be paid by appellee.*