480 A.2d 820

**Debra Lynne SKEENS, et al.**
v.
**Jeffrey PATERNO.**

**Debra Lynne SKEENS, et al.**
v.
**Jeffrey PATERNO.**

**Nos. 1390, 1576, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Sept. 7, 1984.

Certiorari Denied Dec. 4, 1984.

50

52

---

Edward John Skeens, Suitland, for appellants.

Joseph S. Kaufman and Phyllis W. Brown, Baltimore, with whom were Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, on the brief, for appellee.

Argued before GARRITY, ADKINS and ALPERT, JJ.

ADKINS, Judge.

Although this suit began as a battle about adoption, it is now essentially a dispute about visitation rights of the father and paternal grandparents of an illegitimate child.

On January 21, 1983, appellant Debra Skeens, then an unmarried minor, bore a child. The father was appellee Jeffrey Paterno, an enlisted member of the United States Navy. Debra declined Jeffrey's offer of marriage. Prior to the child's birth, she and her parents, appellants Edward and Dorothy Skeens, had made plans to place the child for adoption. Three days after the child's birth, Jeffrey sued Debra (sometimes denominated Deborah) and her parents in the Circuit Court for Prince George's County. Jeffrey sought to enjoin Debra and her parents from proceeding with or engaging in any suit relative to the child's adoption. He also requested custody of the child.

In the course of a plethora of subsequent judicial activity, including an appeal to this court, *Skeens v. Paterno*, No. 94, September Term, 1983 (May 23, 1983, unreported) the adoption issue disappeared from the case. By order dated September 2, 1983, modified by an order of December 8, 1983, Judge Ahalt:

1. Awarded custody of the child to Debra, subject to liberal visitation rights in favor of Jeffrey, those rights to be exercised through his parents, Peter and Zola Paterno during Jeffrey's absence on Navy duty;

2. Ordered Jeffrey to pay Debra $200 per month for the child's support;

3. Ordered Edward and Dorothy Skeens to pay all the costs of the proceedings, including the fees of a medical expert, the fees of the court-appointed guardian for Debra, and the fees of the court-appointed attorney for the child:

4. Denied the Skeens's motion for reimbursement of certain medical expenses incurred in connection with the child's birth; and

5. Amended the child's birth certificate to include Jeffrey's name as his father.

The Skeenses appealed. Although they argue at length the constitutionality of Maryland's adoption law (Code, Art. 16, §§ 67 *et seq.*, including the provisions added by Ch. 514, Acts of 1982), that question is moot since, as we have observed, adoption is no longer an issue in the case. The principal remaining issue raised by the appellants has to do with the award of visitation rights. As to this, they assert that Jeffrey could not seek custody of the child absent a decree of filiation. They question the authority of the chancellor to award visitation rights to the paternal grandparents of an illegitimate child. And they argue that the liberal visitation rights established by the chancellor are unauthorized by law and not in the best interests of the child.

In addition, they assert that Jeffrey should not have been permitted to pursue khis custody action until he had paid the costs of the first appeal; that the trial court lacked jurisdiction to proceed while that appeal was pending before the Court of Appeals; that Jeffrey should have been required to pay the hospital and medical expenses associated with the baby's birth; and that they (the elder Skeenses) should not have been ordered to pay the court costs below.

Jeffrey cross-appealed, raising but a single issue: whether the chancellor's order should have been "interim in nature so that [Jeffrey] is not prejudiced in his desire to obtain custody." [1]

We now proceed to consideration of these contentions.

---

1. Jeffrey also has moved to dismiss the Skeens's appeal on the ground of various violations of the Md.Rules. It does appear that the appellant violated these rules in several particulars but Jeffrey has remedied much of the harm by printing omitted portions of the record in an appendix to his brief. Our authority to dismiss an appeal for such violations is discretionary, *Kemp-Pontiac-Cadillac v. S & M Constr.*, 33 Md.App. 516, 521, 365 A.2d 1021 (1976), and we opt to decide this case on its merits, sanctioning the violations by an appropriate allocation of costs. While on the subject of rule violations, we also note that

## I. THE APPEAL

### A. *Visitation Rights*

In his December 8, 1983, order Judge Ahalt said:

[T]he Court is persuaded by a preponderance of the evidence that it will be in [the child's] best interest to be in the custody of [its] mother. The Court is further persuaded by a preponderance of the evidence that it will be in [the child's] best interest to have reasonable and extended visitation with [its] father including but not limited to at least two consecutive days and nights per week, alternating major holidays of New Years, Easter, Memorial Day, Thanksgiving and Christmas and six consecutive weeks during the summer months of June, July and August of each year. The two consecutive days and nights will be each and every Thursday from 6:00 p.m. until Saturday at 6:00 p.m. The Court is further persuaded by a preponderance of the evidence that it is in the best interest of [the child] for Jeffrey to exercise his visitation while enlisted in the U.S. Navy through his parents, Peter and Zola Paterno, at their residence and that they may physically take custody of [the child] during such visitations.

### 1. Decree of Filiation

Despite the facts that Jeffrey has asserted that he is the child's father, that Debra has admitted it, and that no one has denied it, the Skeenses assert that Jeffrey may not seek custody of the child, or visitation with it, absent a filiation decree: a judicial determination of paternity. They made a similar argument in the first appeal in this case when they contended that Jeffrey could not withhold his consent for

---

following oral argument, appellants filed a "Supplement to Oral Argument." The rules permit no such supplementation, which amounts to a belated reply brief and which, in this case, is an obvious effort to evade the denial of their earlier motion to permit extended oral argument of one hour. We have given no consideration to this supplement; to do so would be patently unfair to appellee.

the child's adoption unless he had first been judicially determined to be the father. We rejected that argument. *Skeens v. Paterno, supra,* slip op. at 11. We reject the like contention made here.

■ Section 3–602(a) of the Courts and Judicial Proceedings Article grants a court of equity "jurisdiction over the custody, guardianship, legitimation, maintenance, visitation and support of a child." In *Marshall v. Stefanides,* 17 Md.App. 364, 302 A.2d 682 (1973) we construed that statute's predecessor, Article 16, § 66(a).[2] The case involved a father's attempt to obtain custody of his illegitimate children. There was no decree of filiation or legitimation. Nevertheless, Judge (now Chief Judge) Gilbert opined "that the law of Maryland is that the father of illegitimate children may not be denied the right to seek custody of those children." 17 Md.App. at 376, 302 A.2d 682. We see no reason to depart from that holding. And if a father may seek custody of an illegitimate child *sans* a filiation decree, he surely may obtain visitation rights without one. That is all Jeffrey won in this case.

Moreover, even if legitimation were required as a prerequisite to Jeffrey's request, we think it was accomplished here.

Section 1–208(b) of the Estates and Trusts Article provides that an illegitimate child

shall be considered to be the child of his father only if the father

(1) Has been judicially determined to be the father in an action brought under the statutes relating to paternity proceedings; or

---

**2.** The Art. 16, § 66(a) references to "custody ... of *legitimate and illegitimate* children" [emphasis supplied] were deleted during the process of code revision in 1973 because Art. 1, § 16 defines "child" as including both. Revisor's Note to § 3–602 of the Courts Art. as contained in Ch. 2, Laws of 1st Sp. Session of 1973. The word "child" as contained in § 3–602 encompasses both legitimate and illegitimate children.

(2) Has acknowledged himself in writing to be the father; or

(3) Has openly and notoriously recognized the child to be his child; or

(4) Has subsequently married the mother and has acknowledged himself, orally or in writing, to be the father.

In *Thomas v. Solis,* 263 Md. 536, 542, 283 A.2d 777 (1971) the Court of Appeals observed that while in this statute (then Art. 93 § 1–208) the

legitimation provision [although contained in an inheritance statute] is not limited in its scope and application to matters of inheritance ... such a procedure should certainly be of sufficient legal validity to establish other rights, ofttimes inferior to that of inheritance, arising from the relationship existing between parent and legitimate issue.

The legislature, too, has recognized § 1–208 as a legitimation statute, for § 3–602(a) of the Courts Article, in explaining how a court may exercise the jurisdiction bestowed by the latter section, lists as one function the determination "of the legitimacy of a child pursuant to § 1–208 of the Estates and Trusts Article." *See State v. Rawlings,* 38 Md.App. 479, 381 A.2d 708 (1978).

■ The Skeenses, it seems, would have us read § 1–208(b) as permitting legitimation only by way of judicial decree. It is true that in *Thomas* the Court of Appeals remanded the case for a judicial declaration as to the legitimacy of the children there involved. But that was the precise relief Thomas was seeking. The statute is clearly not limited to the procedure described in paragraph (1); it is written in the disjunctive, and any one of the four methods specified may be the basis for legitimation. A judicial decree is not the only route to that goal. *Williams v. Williams,* 18 Md.App. 353, 359, 306 A.2d 564 (1973), *overruled on other grounds,* 49 Md.App. 349, 431 A.2d 749 (1981). *See also Davis v. Schweiker,* 553 F.Supp. 158

(D.Md.1982) and *Massey v. Weinberger,* 397 F.Supp. 817, 821 (D.Md.1975).

■ In the case at bar, Jeffrey "acknowledged himself in writing" to be the child's father. He did so in the very first pleading he filed in this case. That was sufficient to satisfy the requirements of paragraph (2) of § 1-208(b). There was no need for him to obtain a filiation decree in order to seek custody of the child or visitation with it.

### 2. Grandparental Visitation

The Skeenses also aver that the visitation rights afforded Jeffrey's parents, Peter and Zola Paterno, are not permissible under Maryland law. This contention is not based on any claim as to lack of fitness on the part of the elder Paternos, nor could it be, in light of the record before us. Rather, it is grounded on the flat assertion that "the court had no jurisdiction or authority to award visitation rights to the paternal grandparents." This is the case, say the Skeenses, because § 3-602(a)(4) of the Courts Article so requires.

As we have previously noted, § 3-602(a) gives equity courts broad authority to determine, among other things, the custody of children. Paragraph (4) of that subsection deals specifically with visitation rights as a type or subclass of custody. It allows a court to

[d]etermine who shall have visitation rights to a child. *At any time following the termination of a marriage the court may consider a petition for reasonable visitation by one or more of the grandparents of a natural or adopted child of the parties whose marriage has been terminated, and may grant such visitation if the court believes it to be in the best interests of the child....* [Emphasis supplied.]

■ The emphasized language was added to the paragraph by Ch. 276, Laws of 1981. According to the Skeenses, that language limits court-authorized grandparental visitation to a situation in which a marriage has terminated. In

the case before us, there never was a marriage. Therefore, they insist, the court could not permit grandparental visitation. The statute is susceptible to that interpretation. It might also, however, be read as intending only to make it clear that a court may allow grandparental visitation after termination of a marriage, rather than as a limitation on such visitation in other circumstances. Because the statute is ambiguous, we may resort to various aids to construction as we attempt to ascertain legislative intent. *Fairchild Industries v. Maritime Air Service, Ltd.,* 274 Md. 181, 185–86, 333 A.2d 313 (1975).

Chapter 276 was introduced as Senate Bill 333 of the 1981 legislative session. Its short title proclaimed it as legislation concerning "Visitation Rights—Grandparents" while its purpose clause explained it was designed for "clarifying that a court may grant visitation rights to grandparents of a child." The body of the bill proposed to amend § 3–602(a)(4) so that it would read: "(4) Determine who shall have visitation rights to a child, INCLUDING ANY OF THE GRANDPARENTS OF THE CHILD IF THEY SO REQUEST." [3]

After minor amendments in the Senate, the bill went to the House of Delegates. There the purpose clause was amended to provide that the bill was for "clarifying when a court may grant visitation rights to grandparents of a child." The new language proposed by the Senate Bill was deleted and the language emphasized on page 7, *supra,* was inserted. In that form, the bill passed the House. The Senate concurred in the House amendments.

This history could be read to support the Skeens's interpretation of the law. What started out as a rather broad bill pertaining to grandparents' visitation ended as an act dealing with grandparents' visitation only in the context of

---

**3.** The language the bill would have added to then-existing law is shown entirely in capital letters.

marital termination. But review of other legislative materials belies this restrictive reading.

In 1981, it seemed clear enough that as a matter of law grandparents could be granted custody of and visitation rights to their grandchildren. *See, e.g., Maddox v. Maddox,* 174 Md. 470, 199 A. 507 (1938) and *Powers v. Hadden,* 30 Md.App. 577, 353 A.2d 641 (1976). Nevertheless, the files of both the Senate Judicial Proceedings and the House Judiciary Committees show that there was substantial concern on this subject. For example, a letter from the Montgomery County Government to the chairman of the former committee stressed the need for *clarification* of grandparental rights. And the need for such clarification was often expressed, in other material in the committees' files, in the context of a divorce situation; that is, the termination of a marriage. What appears to be a committee staff summary of the bill advises:

> This bill simply clarifies that a court may, in exercising its jurisdiction over a child's custody and support, allocate visitation rights to ... grandparents. This is implicit in the current law, and it was felt that it ought *to be emphasized by being expressly stated* [emphasis in original].

The intent to clarify existing law, rather than to change it, is also expressed in the bill's purpose clause, as we have seen.

■ One way of ascertaining legislative intent is to identify the problem the legislature was seeking to resolve in enacting a particular law. *See Board of Examiners of Optometry v. Spitz,* 300 Md. 466, 479 A.2d 363 (1984) 479 A.2d at 367. The legislative history here suggests that the problem to be addressed by Senate Bill 333 was uncertainty as to whether grandparents could request visitation with their grandchildren after the termination of a marriage. The legislative history contains no indication that the bill was intended as a limitation on grandparental visitation—or on any one else's visitation—in other contexts, such as a

case involving an illegitimate child. Nor is any argument made as to why the legislature might wish to impose such a limitation.

■ We hold, therefore, that § 3–602(a)(4) does no more than restate existing law as to grandparental visitation rights in a termination of marriage context. It does not limit the power of a court as to custody and visitation by grandparents under other circumstances. This construction also harmonizes the provisions of paragraph (4) with the broad authority granted to the courts in the introductory sentence of subsection (a). *Smith v. Higinbothom,* 187 Md. 115, 131–32, 48 A.2d 754 (1946). Additionally, it avoids an anomalous result and one with possible equal protection implications. Under the Skeens's reading of paragraph (4), only parents, and in the event of the termination of a marriage, grandparents, would be able to seek visitation rights. *Pan Am Sulphur v. State Dept.,* 251 Md. 620, 627, 248 A.2d 354 (1968); *Berlin v. Aluisi,* 57 Md.App. 390, 397, 470 A.2d 388 (1984). We do not believe the legislature intended any such sweeping limitations.

■ Under any circumstances, the ultimate test for custody and visitation is the best interests of the child. *See, e.g., Elza v. Elza,* 300 Md. 51, 475 A.2d 1180 (1984); *Boothe v. Boothe,* 56 Md.App. 1, 466 A.2d 58 (1983) and Annot., "Grandparents' Visitation Rights," 90 A.L.R.3d 222 (1979). It may well be, as we said in *Boothe,* 56 Md.App. at 4–5, 466 A.2d 58, that custody should be granted to a grandparent (as against a parent) only under exceptional circumstances. That may also be true as to grandparental visitation. *See Chodzko v. Chodzko,* 66 Ill.2d 28, 4 Ill.Dec. 313, 360 N.E.2d 60 (1976) and *In the Matter of Adoption of a Child,* 140 N.J.Super. 91, 355 A.2d 211 (1976). But here Jeffrey's absence on naval duty constituted such a circumstance. While he was away, an important way for him to maintain contact with the child—and for the child to maintain contact with the paternal side of his family—was through Jeffrey's parents. *Solomon v. Solomon,* 319 Ill.

App. 618, 49 N.E.2d 807 (1943); *compare Powers v. Hadden, supra.*

We hold that under the circumstances of this case the court had power to award visitation rights to the child's paternal grandparents and that it did not abuse its discretion in doing so.

### 3. The Visitation Award

There remains for consideration the question whether the detailed provisions of that visitation award were an abuse of discretion.

As we have seen, Judge Ahalt awarded liberal visitation rights to Jeffrey, which rights are to be exercised through his parents while he is absent on naval duty. Debra argues that these rights amount to joint custody which, she says, is not permitted under Maryland law. Judge Bloom disposed of that argument in *Kerns v. Kerns,* 59 Md.App. 87, 474 A.2d 925 (1984). We note in passing, too, that this aspect of the case does not involve joint or any other kind of custody. Custody of the child is in Debra, and no one is presently contesting that. We deal here with visitation rights.

Debra also contends that the visitation rights are burdensome and disruptive. No evidence in the record supports that position. On the contrary, there is ample evidence that the child should have contact with its father and its father's family, and that the elder Paternos are in every respect fit grandparents. *See Barsallo v. Barsallo,* 18 Md.App. 560, 570, 308 A.2d 457 (1973) as to the desirability of maintaining such familial relationships. That the visitation schedule might interfere with the child's schooling is hardly an immediate problem, since it is now less than two years old. When circumstances change, or if actual adverse effects to the child appear, the visitation rights can always be adjusted appropriately. *See Taylor v. Taylor,* 246 Md. 616, 620, 229 A.2d 131 (1967).

In short, we cannot say that the visitation arrangements were not in the best interest of the child, and thus we

cannot say that the chancellor abused his discretion in making the award.

### B. *Other Issues*

### 1. Pursuit of Custody Action Without Payment of Appeal Costs

In the earlier appeal in this case, *Skeens v. Paterno, supra,* we vacated the trial court's order and directed Jeffrey to pay the costs, which amounted to $1,516.60. The Skeenses asked the trial court to rule that Jeffrey could not pursue his custody action until those costs had been paid. The motion was denied.

They now argue that a father who is delinquent in making support payments may be denied access to his child. *Raible v. Raible,* 242 Md. 586, 219 A.2d 777 (1966). They posit that a similar rule should be applied in the case of non-payment of the costs of an appeal.

In *Raible* the trial court conditioned a father's visitation rights upon his payment of arrearages in child support. The Court of Appeals held this to be a reasonable condition imposed on the right of access. It pointed out that the welfare of the children was involved, and that the children "are financially dependent upon the payments for their support, and their welfare may be adversely affected if their mother is subjected to unnecessary economic worry." 242 Md. at 598, 219 A.2d 777. In the instant case, there is no showing that the child's welfare will be in any way affected by the fact that Jeffrey has not paid the appeal costs, nor is there any suggestion that Jeffrey is not paying the $200 per month Judge Ahalt required him to contribute towards the child's support. *Raible* is inapposite.

 A decision regarding the continuance or stay of a proceeding until prior costs have been paid is one within the sound discretion of the trial court. *See Brinsfield v. Howeth,* 107 Md. 278, 68 A. 566 (1908); *Waters v. Smith,* 27 Md.App. 642, 342 A.2d 8 (1975), *aff'd.,* 277 Md. 189, 352 A.2d 793 (1976). Such a stay should be granted "only where the second suit is vexatious and without merit."

*Brinsfield,* 107 Md. at 294, 68 A. 566. While that case involved two consecutive lawsuits, we think the same rule applies to further proceedings in a single suit when costs of earlier proceedings have not been paid. Jeffrey's suit was not "vexatious and without merit." Judge Ahalt did not abuse his discretion in allowing it to proceed despite the non-payment of the appeal costs.[4]

### 2. Loss of Jurisdiction Because of Appeal to the Court of Appeals

When we vacated the trial court's order on the first appeal, we remanded the case for further proceedings and issued our mandate immediately. The Skeenses petitioned the Court of Appeals for a writ of certiorari and objected to further proceedings in the trial court while the petition was pending. The trial court nevertheless proceeded pursuant to our mandate. The Court of Appeals denied the petition on September 2, 1983, 296 Md. 655 (1983).

The Skeenses assert that the trial court lacked jurisdiction to proceed with the matter because when an appeal has been noted, only the appellate court has jurisdiction over the subject matter of the appeal. That may be true under some circumstances when an appeal as of right is involved, *Eisenbeiss v. Jarrell,* 52 Md.App. 677, 451 A.2d 940 (1982), *cert. den.,* 295 Md. 301 (1983), *U.S. cert. den.,* — U.S. —, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983), although the rule should not be stated too broadly. *See In Re: Special Investigation No. 281,* 299 Md. 181, 473 A.2d 1 (1984). But whatever the scope of the rule and the exceptions to it, it has no application here.

■ Whether to grant a petition for writ of certiorari is within the discretion of the Court of Appeals. Courts and Judicial Proceedings Art. §§ 12–201 and 12–203; Md.Rule 811. The filing of such a petition is not the noting of an appeal as of right. As Md.Rule 800 a makes clear, an

---

**4.** We note that the Skeenses have issued an attachment against certain property of Jeffrey's in an effort to collect these costs.

"[a]ppeal" to the Court of Appeals does not exist until the writ has been granted. In *Walston v. Sun Cab Co.*, 267 Md. 559, 565, 298 A.2d 391 (1973) the Court of Appeals discussed the statutory provisions dealing with certiorari. It concluded that "the General Assembly intended to give an appeal, *as of right*, in cases within the appellate jurisdiction of the Court of Special Appeals and a 'further appeal' by our exercise of *discretion* in granting writs of certiorari when review and determination by us appear to be 'desirable and in the public interest.'" [Emphasis in original.] The Court went on to note that only after it has granted the writ is the case transferred from its miscellaneous docket to its appellate docket. Only then is "the case treated like every other *appeal.*" [Emphasis in original.] 267 Md. at 568, 298 A.2d 391.

In the case before us, the petition for certiorari was denied. During its pendency, no appeal was pending in the Court of Appeals. The trial court properly proceeded to hear the merits of the case pursuant to the mandate we issued.

### 3. Hospital and Medical Expenses

In the trial court, appellant Edward Skeens moved that appellee Jeffrey be required to pay some $2,981.00 for hospital expenses incurred in connection with the child's birth and for pre-natal medical expenses incurred on behalf of appellant Debra. It was agreed that the bills were paid by Edward's Blue Cross and Blue Shield insurance, and that the subrogation provisions of that insurance would not be enforced. Judge Ahalt, concerned with Jeffrey's ability to pay, denied the motion.

Article 16 § 66H(a)(3) provides that a court *"may* require the defendant [in a paternity case] to pay all or any part of the mother's medical and hospital expenses for her pregnancy, confinement, and recovery...." [Emphasis supplied.] In addition, "neonatal expenses" for the child *may* be awarded. As Chief Judge Gilbert pointed out in *Powley v. Owens*, 49 Md.App. 349, 354, 431 A.2d 749 (1981), however,

"[t]he statute is couched in permissive terms, not mandatory terms." The issue thus becomes "whether the trial court abused its discretion in refusing to order" Jeffrey to pay the medical expenses at issue. *Id.*

We perceive no abuse of discretion. Edward and Dorothy Skeens, as the parents of a minor, Debra, had an obligation to provide for her support. Art. 72A, § 1. *See Rand v. Rand,* 280 Md. 508, 374 A.2d 900 (1977). Edward provided for that obligation in part through his health insurance policies. The chancellor was not required to compel the impecunious Jeffrey to reimburse Edward or the health insurer for all or any part of these expenses.

### 4. Court Costs Below

During the course of the proceedings below, the trial court appointed counsel for the child and a guardian for his minor mother, Debra. In addition, expert child psychiatrists performed various studies and one of them testified. The court assessed fees of $3,450, $1,427 and $1,297.50 respectively, together with other court costs, against appellants Edward and Dorothy Skeens.

Edward and Dorothy now argue that this was error because they were dismissed as parties below before the fees and costs were assessed. They are wrong. A motion to dismiss was filed by Jeffrey, but the court never acted on it. They remained in the case as parties below and are properly appellants here.

Nor do we think that Judge Ahalt abused his discretion in assessing these costs against the elder Skeenses. Maryland Rule 604 a, which was in effect when the case was tried, provided that in general the prevailing party is entitled to costs. Jeffrey prevailed in his efforts to prevent the child's adoption, and on this issue Edward and Dorothy were on the losing side. Debra succeeded in obtaining custody of the child, a result no doubt gratifying to her parents, but Jeffrey, as we have seen, gained substantial visitation rights. Rule 604 a permitted, and current Rule 3–603(a) permits, the court to "allocate costs among the parties" which is what Judge Ahalt did. Such an

allocation is ordinarily within the discretion of the trial court. *Schmidt v. Chambers*, 265 Md. 9, 40, 288 A.2d 356 (1972).

There is no problem with the way in which Judge Ahalt treated the guardian's fee and the witness fees as court costs. The only possible difficulty arises in connection with the fee for the child's counsel. This difficulty is presented because of the so-called "American Rule" which states generally that the prevailing party may not recover its attorney's fees from the losing party. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 245, 95 S.Ct. 1612, 1615, 44 L.Ed.2d 141 (1975); *Arcambel v. Wiseman,* 3 Dal. 306 (1796); *Empire Realty Co. v. Fleisher,* 269 Md. 278, 285, 305 A.2d 144 (1973); *Colonial Carpets, Inc. v. Carpet Fair, Inc.,* 36 Md.App. 583, 590, 374 A.2d 419 (1977). Additionally, the Court of Appeals has said that an attorney's fee, except for an appearance fee, should not be included among the taxed costs of a case unless there is a special statute authorizing it. *Hamilton v. Trundle,* 100 Md. 276, 278, 59 A. 719 (1905).

██ These cases and many other Maryland decisions in which payment of legal fees, whether as damages or costs, has been disapproved, all involved circumstances in which the prevailing party in a law suit sought recovery of its counsel fees from the losing party. That, of course, is not the situation presented here. In this case, at issue is the fee for the child's court-appointed counsel. The child was not a party to the case; it, or its adoption or custody, was the object of the case. On these facts, we do not think the "American Rule" applies. If part of its *rationale* is to encourage liberal access to the courts by eliminating the potential chilling effect of payment of counsel fees in the event of an adverse outcome, *Fleishmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), that *rationale* has no application to this case, so far as the fee of the child's lawyer is concerned.

██ Moreover, the cases make clear that the "American Rule" in no event applies when there is a statutory or

similar authorization for payment of counsel fees. *See, e.g.,* the discussion in *Colonial Carpets, supra,* 36 Md.App. at 590–91, 374 A.2d 419 and especially footnotes 12 and 13. In Maryland there is a statute that permits a court to "appoint an attorney to represent a minor in any action brought under this subtitle [Family Law] in which the issue of custody, visitation rights, or the amount of support is contested...." The court "may levy counsel fees against either or both parents as is just and proper under all the circumstances." Courts and Judicial Proceedings Article § 3–604.

Section 3–604 was not mentioned by the trial court. So far as the record discloses, it was not raised below. No party has cited it on appeal. Thus, its construction is not properly before us. Md.Rule 1085. We need not and do not decide, for example, whether the reference to assessing fees "against either or both parents" is intended to limit the court's discretion or is merely by way of example and intended to permit a broader award. *Compare* § 3–834 of the Courts Article, which permits the court to appoint counsel in a juvenile case and to assess counsel fees "against any party or parties to the action." *See also* Md.Rule 906 b 3. The fact remains that there is a statute allowing the court to assess fees for counsel appointed for a child in a custody, visitation, and support matter, which this certainly is. On this record, the issue whether Judge Ahalt properly exercised his statutory discretion in assessing those fees against Edward and Dorothy Skeens is not before us.

We reject their contention that the trial court erred in the allocation of counsel fees, guardian fees, witness fees and court costs in general.

## II. THE CROSS–APPEAL

As we observed early on, Jeffrey raises but a single issue on his cross-appeal: whether the chancellor's order should have been "interim in nature so that [he] is not prejudiced in his desire to obtain custody." The answer is "no."

Jeffrey's argument is based on Judge Ahalt's finding that "because of [Jeffrey's] commitment to the U.S. Navy his ability to accept custody is hampered, although he is fit to have custody of the child." That commitment, says Jeffrey, will expire in 1985. If it does, that will be time enough to consider possible changes in custody.

■ During the minority of a child, issues of modification of custody and visitation are never strictly foreclosed. The non-custodial parent may always seek a change in arrangements and may succeed if he or she demonstrates sufficiently changed circumstances and that a modification will be in the best interests of the child. *Montgomery County v. Sanders,* 38 Md.App. 406, 419, 381 A.2d 1154 (1978). Just as Debra may, upon a proper showing, attempt to adjust Jeffrey's (and his parents') visitation rights, so Jeffrey may, upon a proper showing, seek a change in the child's custody.

■ Judge Ahalt was not required to make his custody order "interim" in order to preserve Jeffrey's right to seek future changes in it.

MOTION TO DISMISS APPEAL DENIED.

JUDGMENT AFFIRMED.

APPELLANTS TO PAY THE COSTS.