622 A.2d 150

**In re ADOPTION/Guardianship NO. 92A41 in the Circuit Court for Baltimore County.**

**No. 1731, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

March 31, 1993.

---

Nancy M. Levin, Towson, for appellant.

William R. Evans, Baltimore, for appellee.

Argued before ROSALYN B. BELL, FISCHER and MOTZ, JJ.

FISCHER, Judge.

Carmela D., appellant and grandmother of two children, appeals an August 6, 1992 order of the Circuit Court for Baltimore County denying her grandparental visitation. The children, born of the marriage of Carmela's daughter, Gloria Ann J., to Jeffrey J., Sr., are Rebecca Ann J., born July 13, 1982, and Jeffrey J., Jr., born April 10, 1985. Gloria Ann died from cancer on May 25, 1990. Approximately six months later, on December 22, 1990, Jeffrey J., Sr. married Valerie J. On June 20, 1991, the Circuit Court for Baltimore City ordered grandparental visitation to Glo-

ria Ann's parents, Carmela and her husband.[1] On February 20, 1992, Valerie and Jeffrey, Sr. petitioned the Circuit Court for Baltimore County on behalf of Valerie for adoption of the children. On March 3, 1992, Carmela petitioned the court for continuation of grandparental visitation. Carmela notes this appeal from the August 6, 1992 order of the circuit court denying her grandparental visitation. We have consolidated the issues presented by Carmela to the following: [2]

Did the trial court err by denying Carmela grandparental visitation upon the adoption of the children by their stepmother?

In March, 1991, a period of time after Jeffrey, Sr. had married Valerie, Carmela and her husband petitioned the Circuit Court for Baltimore City for grandparental visitation. Pursuant to Md.Fam.Law Code Ann. § 9–102, if the court finds that it is in the best interest of the children, grandparents may be granted visitation upon the termination, by divorce, annulment, or death, of the marriage of the children's parents.[3] The Circuit Court for Baltimore City granted Carmela and her husband visitation one day each month, from a Friday evening to a Saturday evening, and on certain holidays throughout the year. At the time the order was entered, the children lived across the street from their grandparents.

On March 3, 1992, after the petition for adoption of the two children was filed, Carmela filed a "Petition for the Continuation of Grandparent's Visitation Rights."[4] The court denied the continuation of grandparental visitation to Carmela and stated:

---

1. Carmela's husband is now deceased.

2. Carmela does not appeal the grant of the adoption decree.

3. Unless otherwise specified, all other statutory references are to Maryland Family Law Code Annotated.

4. Carmela filed this petition pro-se, but she has since retained counsel.

> To date, the only exception to the severance of natural blood ties is upon agreement. This court, as a trial court, should create no further exception to the strong statutory mandate. Considering the strength of the legislative mandate, the fact this is not a confidential adoption, or that there are prior orders of court makes no difference. Absent a [visitation] agreement, nothing should be entered incident to the adoption proceeding.

The court apparently found, and the parents maintain, that the adoption decree divests the natural mother's parents of all rights to the children, including the visitation rights granted to her by the Circuit Court for Baltimore City.[5]

■ The record indicates that, at the adoption hearing, the parties were prepared to argue the petition for continuation of visitation. We distill from the judge's memorandum that he concluded that he was without authority, pursuant to *Spencer v. Franks*, 173 Md. 73, 195 A. 306 (1937), to hear the visitation issue as part of the adoption proceeding. In *Spencer*, the Court of Appeals struck down the portion of an adoption decree that granted the natural mother rights to visitation. The Court of Appeals noted that adoption did not exist at common law but is rather the creation of statute and that, by ordering visitation, the trial court exceeded its jurisdiction. *Spencer*, 173 Md. at 81, 195 A. 306. Since the purpose of the adoption statute is to terminate the legal rights of the natural parent, the Court concluded that "the chancellor could not impose conditions in a decree of adoption which would assure to the natural parents rights which the decree extinguished by statutory mandate and whose continuance was inconsistent with the enjoyment by the adoptive parents of the status created by the terms of the statute." *Spencer*, 173 Md. at 83, 195 A. 306. We agree that the scope of the adoption statute does not give the court jurisdiction to hear a visitation issue within the confines of an adoption proceeding.

---

5. We will denote Valerie and Jeffrey, Sr. as the "parents."

The parents contend that, upon the adoption of the children by Valerie, § 5–308 revokes Carmela's rights as the maternal grandmother and hence, severs her rights to visitation under § 9–102. Section 5–308 delineates the rights, duties, and privileges of adoptive parents, living natural parents, and adoptees. This section provides in part:

(2) Each living natural parent of the individual adopted is:

(i) relieved of all parental duties and obligations to the individual adopted; and

(ii) divested of all parental rights as to the individual adopted; and

(3) all rights of inheritance between the individual adopted and the natural relatives shall be governed by the Estates and Trusts Article.

In *Weinschel v. Strople,* 56 Md.App. 252, 262, 466 A.2d 1301 (1983), we quoted from the General Assembly's remarks found in Md.Ann.Code Art. 16, § 67(a) pertaining to the legislative purpose of the adoption statutes:

The General Assembly hereby declares its conviction that the policies and procedures for adoption contained in this subtitle are socially necessary and desirable, having as their purpose the threefold protection of (1) the adoptive child, from unnecessary separation from his natural parents and from adoption by persons unfit to have such responsibility; and (2) the natural parents, from hurried and abrupt decisions to give up the child; and (3) the adopting parents, by providing them information about the child and his background and protecting them from subsequent disturbance of their relationships with the child by natural parents....

█ In most cases, the adoption statutes are necessary to ensure confidentiality and to assist in the creation of a new parental relationship. We do not find, however, in cases wherein one of the natural parents is deceased and the stepparent petitions to adopt the child, that the statute vitiates automatically the grandparents' rights to visitation. If § 5–308 is properly read to void parental rights of "living

natural parents" (an issue which we do not decide here), it clearly does not purport to terminate the rights of a deceased parent's mother or father.

Carmela was granted visitation under § 9–102, which provides for the right of grandparents to petition the court for visitation upon the termination of a marriage by divorce, annulment, or death. In *Skeens v. Paterno,* 60 Md.App. 48, 480 A.2d 820 (1984), we discussed the legislative intent behind § 9–102 in allowing for grandparental visitation upon the termination of a marriage.[6] We found in *Skeens,* 60 Md.App. at 60, 480 A.2d 820, that Senate Bill 333, which amended the statute to include grandparental visitation, had been summarized by a Senate committee member to mean:

> This bill simply clarifies that a court may, in exercising its jurisdiction over a child's custody and support, allocate visitation rights to ... grandparents. This is implicit in the current law, and it was felt that it ought *to be emphasized by being expressly stated.* [Emphasis in original.]

We then stated, "The legislative history here suggests that the problem to be addressed by Senate Bill 333 was uncertainty as to whether grandparents could request visitation with their grandchildren after the termination of a marriage. The legislative history contains no indication that the bill was intended as a limitation on grandparental visitation...." *Skeens,* 60 Md.App. at 61, 480 A.2d 820. As we determined in *Skeens,* 60 Md.App. at 61, 480 A.2d 820, this statute does not "limit the power of the court as to custody and visitation by grandparents under other circumstances."

---

**6.** Section 3–602(a) of the Courts and Judicial Proceedings Article is the precursor to § 9–102 of the Family Law Article and allowed a court to "determine who shall have visitation rights to a child." Chapter 276 of the Laws of 1981 amended this section by adding the following, "At any time following the termination of a marriage the court may consider a petition for reasonable visitation by one or more of the grandparents of a natural or adopted child of the parties whose marriage has been terminated, and may grant such visitation if the court believes it to be in the best interests of the child...."

Although we have not addressed the issue of adoption with relation to the rights of a grandparent, we have recognized that living natural parents and adoptive parents may agree to allow for visitation by a natural parent. In *Weinschel*, the natural mother and father divorced and the father remarried. The natural mother consented to the adoption of the children by their stepmother upon condition that she continue to have visitation. We stated, "[V]isitation between the natural parent and adoptive child is unusual, at least while the child is a minor under the custody and control of the adoptive parent. Being unusual, however, does not make it illegal, against public policy, or contrary to the best interest of the child." *Weinschel*, 56 Md.App. at 262, 466 A.2d 1301. We found that there was nothing in the legislative intent and purpose of the adoption statutes to preclude an agreement between the adoptive parents and natural parents to allow visitation by the natural parents. We found in *Weinschel* that the statute protecting the legal rights of the adoptive parents was "a shield not a sword. It does not purport to mandate that the adoptive parents and the natural parents may not under any circumstances agree to visitation privileges by the natural parents with the shield they have yielded to the adoptive parents." *Weinschel*, 56 Md.App. at 263, 466 A.2d 1301.

Although this is a case of first impression in Maryland, some of our sister states have addressed the rights of grandparents upon the adoption of a grandchild. Most recently, the Supreme Court of Wisconsin in *In Matter of C.G.F.*, 168 Wis.2d 62, 483 N.W.2d 803, *cert. denied*, —— U.S. ——, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992), held that grandparents' rights to visitation are not abolished upon the adoption of a grandchild by a stepparent. Wisconsin's adoption statute, like § 5–308, terminates the rights of a natural parent upon the adoption of a child. The Supreme Court of Wisconsin found, however, that the statute only addresses those situations where the natural parents relinquish their parental rights. Neither the Wisconsin adoption statute nor our § 5–308 address situations wherein the

adopted child's parents are deceased. Specifically, the Wisconsin court stated, "Since the deceased father continues to be a parent, we find his parents should continue to be considered grandparents." *In Matter of C.G.F.*, 168 Wis.2d at 67, 483 N.W.2d at 805.

The courts of New York have also expressed the right of a grandparent to visitation with a grandchild who has been adopted upon the death of a natural parent. In *People ex rel. Sibley v. Sheppard,* 54 N.Y.2d 320, 445 N.Y.S.2d 420, 429 N.E.2d 1049 (1981), the Court of Appeals of New York upheld the right of a natural grandparent to have visitation with her grandchild, when authorized by court decree, despite the adoption of the child. Section 72 of the Domestic Relations Law of New York provides for grandparent visitation upon the death of a parent and § 117 provides that a natural parent of an adopted child shall have no rights over the adoptive child. The adoptive parents in *Sheppard* also asserted, like the parents here, that the adoption statute severs all ties between the grandparents and the adopted child. The Court of Appeals of New York ruled that this analysis is an overly broad interpretation of the adoption statute, especially when the statute does nothing to abrogate the interests of the grandparents. The Court of Appeals stated that § 72 and § 117 were each "designed to accomplish its own purpose. Section 117, among other things, defines the rights and obligations of the natural and adoptive parents with respect to the child's care and custody. Section 72 simply gives to the grandparents the right to seek contact with their grandchild when such contact will be in the child's best interest and will not unduly hinder the adoptive relationship." *People ex rel. Sibley,* 54 N.Y.2d at 326, 445 N.Y.S.2d at 422, 429 N.E.2d at 1051.

California's adoption statute, Civil Code § 197.5, subdivision (c), allows grandparental visitation rights if the child is adopted by a stepparent. The Court of Appeal of California also noted, however, that the visitation guidelines permit the court to grant visitation to "any other person having an interest in the welfare of the child." *In re Marriage of*

*O'Connell,* 80 Cal.App.3d 849, 859, 146 Cal.Rptr. 26, 32 (1978). In light of the adoption statute and visitation guidelines, the California court reasoned that any grandparent of an adopted child may be granted visitation privileges.

Like Wisconsin, New York, and California, we hold that adoption does not automatically vitiate grandparental visitation rights. Section 5–308 only severs the rights of a "living" natural "parent" and does not affect the rights of a deceased parent's mother or father. Also, § 9–102, in substance, was originally enacted through Ch. 276, Laws of 1981, long after the adoption statute. Had the legislature intended § 5–308 to limit the grandparental visitation rights provided under § 9–102, either or both statutes would have addressed the issue. Therefore, upon the death of a natural parent and the adoption of the child by a stepparent, a grandparent remains eligible under § 9–102 to petition the court for visitation. As always, in determining visitation, the court will adhere to what is in the best interest of the child. *Skeens,* 60 Md.App. at 61, 480 A.2d 820. *See also, Elza v. Elza,* 300 Md. 51, 475 A.2d 1180 (1984); *Boothe v. Boothe,* 56 Md.App. 1, 466 A.2d 58 (1983).

In October 1991, the Circuit Court for Baltimore City reaffirmed Carmela's grandparental visitation, and within a few months, the parents petitioned for adoption.[7] At the time of the visitation order, Jeffrey and Valerie were married and were living in Jeffrey's house with Jeffrey's children and with Valerie's seven year old daughter. The master's recommendation and report found:

> Here, we have children, ages eight and five, who lost their mother [to] cancer less than a year ago. They are living with their father, stepmother and stepsister. Their father is trying to build a new family unit. These children have always been close to their maternal grandparents. They continue to live across the street from [their

---

7. The Circuit Court for Baltimore City ordered grandparents' visitation in June of 1991. The parents filed exceptions to the order, and the court reaffirmed the order in October, 1991.

grandparents], but their interaction has been restricted. It appears [the father] sees this as a question of control. However, these children have a right to maintain a relationship with and continue to feel included in their maternal family.

■ Upon taking into consideration the purpose of the adoption and grandparental visitation statutes and the circumstances of this case, we cannot find, as the trial court apparently concluded, that the entry of the adoption decree negates the grandparental visitation order. The adoption statutes provide for the termination of living natural parents' rights upon adoption of the children. This is done to lessen the threat of the natural parent to the "new" family and to avoid the child being torn between a natural parent and an adoptive parent. In this case, the "new" family (natural father, stepmother and children) was in existence at the time the visitation order was entered in the Circuit Court for Baltimore City. Other than the fact of adoption, nothing has changed.

We find, therefore, that the June 20, 1991 order of the Circuit Court for Baltimore City providing for grandparental visitation was not negated by the adoption decree. The Circuit Court for Baltimore County was correct in surmising that the adoption statute does not allow the court in an adoption proceeding to address visitation issues. In the same vein, however, the court was incorrect in vitiating the June 20th order of the Circuit Court for Baltimore City granting grandparental visitation. The court was no more correct in terminating existing visitation rights [8] than it

---

**8.** The precise action taken by the trial court is unclear. This appeal was heard on an agreed statement of the case, and we do not have the benefit of a transcript. The trial court's Memorandum Opinion appears to indicate that the adoption terminated grandparental visitation, although the trial judge also indicates that grandparental visitation could be allowed in a subsequent proceeding. Both parties, however, in their briefs and arguments clearly believed the trial court terminated the existing visitation order. Since the trial court found that it did not have jurisdiction over visitation issues in the adoption

would have been in granting new rights. While we are not holding that grandparental visitation must be continued indefinitely, the existing visitation order is valid until a request for a modification of visitation is filed and a proper hearing is held to determine if grandparental visitation is still in the best interest of the children. Therefore, we vacate that part of the court's judgment terminating Carmela's visitation with the children and direct that the petition be dismissed.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH RESPECT TO DENIAL OF GRANDPARENTAL VISITATION VACATED. IN ALL OTHER RESPECTS, JUDGMENT IS AFFIRMED.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH DIRECTION TO DISMISS PETITION FOR GRANDPARENTAL VISITATION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.

---

proceeding, we believe the proper course would have been to dismiss the Petition for Continuation of Grandparent's Visitation Rights.