TRENTON ET UX. *v.* CHRIST ET UX.

[No. 226, September Term, 1957.]

*Decided April 25, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and GRAY, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Earl Edmund Manges* for the appellants.

*William L. Wilson* for the appellees.

GRAY, J., by special assignment, delivered the opinion of the Court.

The appellant is the father of a ten-year-old girl who now lives with her maternal grandparents in Cumberland, Mary-

land. This suit was instituted by him to procure the custody of his daughter after the child's mother had been killed in an automobile accident. His suit was resisted by the grand-parents on the ground that the best interest of the child dictated that she remain with them. The case was heard before Judge George Henderson and resulted in continuing the custody of the child with the appellees. From this decree the father appealed. Both sides agree that ordinarily either parent is entitled to custody of a child in preference to any third person, but that this rule is subject to the qualification that such custody will be denied if (a) the parent is unfit to have custody, or (b) if there are such exceptional circumstances as make such custody detrimental to the best interest of the child.

The rule is clearly expressed in a well considered opinion of this court by Judge Delaplaine in the case of *Ross v. Pick,* 199 Md. 341, at page 351:

> "Moreover, while the parents are ordinarily entitled to the custody of their minor children by the natural law, the common law, and the statute, this right is not an absolute one, but may be forfeited where it appears that any parent is unfit to have custody of a child, or where some exceptional circumstances render such custody detrimental to the best interests of the child * * *.

> "Where parents claim the custody of a child, there is a *prima facie* presumption that the child's welfare will be best subserved in the care and custody of its parents rather than in the custody of others, and the burden is then cast upon the parties opposing them to show the contrary."

See also *Sibley v. Sibley,* 187 Md. 358, *Roussey v. Roussey,* 210 Md. 261, *Wilhelm v. Wilhelm,* 214 Md. 80, 84. The appellees freely conceded that there is nothing wrong with the father, his second wife, or his home, which would make him unfit to have the custody of his daughter. This case resolves into a question of whether the circumstances are so exceptional as to justify the grant of the custody of the child to the grand-

parents, subject of course, to the continuing jurisdiction of the court. The Chancellor had an opportunity to see and hear all of the witnesses, including the child. He, too, is a long time resident of the community where the little girl has made her home with her mother and her grandparents for eight years and his opinion on this delicate question must be accorded great weight by this court.

Let us briefly examine the facts. The parents of the little girl were both residents of Cumberland and were married in 1946. They separated in 1949 or 1950 and he procured a divorce on the ground of desertion in 1951. The record in this case sheds little light upon the cause for the breakup of this home, but the Chancellor in the course of his opinion mentioned that the plaintiff had indicated in the divorce proceeding that the separation was caused by "difficulties growing out of our religious differences." After the separation, the child and her mother went to live with her maternal grandparents in their home in Cumberland. The mother was employed and doubtless much of the responsibility for the upbringing of her grandchild devolved upon the grandmother. The father of the child remarried in 1952 and he and the second wife now have a 3½ year old son who is handicapped by the loss of his vision at birth. From 1952 until 1956, the appellant was employed in Delaware and at that time was sent to his employer's plant in Michigan and established his home across the river in Wisconsin where he rents with option to buy a quite adequate home.

On May 18, 1957, some 3½ months before this case was heard by the Chancellor, the little girl and her mother were involved in a serious automobile accident in which the mother lost her life. The child was injured although the record does not disclose the nature of her injuries. She was hospitalized for about three weeks and was still under the doctor's care at the time of the hearing. The father returned to Cumberland shortly after the accident and saw his daughter at the hospital, at which time he suggested that he would like her to come to Wisconsin and visit with him there. Her reaction to this was favorable. However, later on when he was visiting his parents in Cumberland and the little girl came to see him, he told her

that he wanted her to go live with him in Wisconsin. She then objected to this and told him she preferred to remain with her grandparents. Either before or after that conversation the husband sought permission of the grandparents to take the daughter home with him, but they declined to give her up. Some time between these conversations and the trial the plaintiff was again in Cumberland and on Thursday called his daughter and asked her to come and visit with him at his parents' home in Cumberland. She found excuses not to do so, although he stated he would be available for the next three days. Apparently this refusal resulted in the pending suit. This sequence becomes significant because as a result of this conversation the child became ill and it is apparent from her testimony and that of the doctor that it was due entirely to the emotional turmoil produced by these events. It is clear from the testimony that the grandparents are worthy persons, have successfully raised a family of four children of their own, the youngest of whom is now 21. It is apparent from the Chancellor's comment and the testimony in the case that the youngster had had the benefit of a careful and wise upbringing. Her personality has developed well, her health has been good, her progress in school excellent, and she has been active in girl scouts and participated in the study of music and dancing. Her development has been most wholesome, and she doubtless has many friends and associates with whom she has warm attachments. The court is asked to sever these associations and to require that she go to live in her father's home. Her opportunity to know her father, her stepmother, and her half-brother have been quite limited. She has visited her father at his parents' home when he came to Cumberland four times per year, and has never had an opportunity to visit in the father's home either in Delaware, where he lived until recently, or in Michigan. Apparently no attempt was made to procure such a visit and this is explained by the father to have been due to the precarious health of the handicapped son. It is understandable that the child would have a great reluctance to tear up her roots in Cumberland for a future which to her must seem quite uncertain. She is an intelligent, well developed child and her preferences must be considered by the

court not so much because she is able to wisely judge what is best for her future, but because the court must consider her desire insofar as it may affect the wisdom of the proposed change. This court sees genuine risk to this child's well being in the proposed change. It is manifest that the mere contemplation of the change produced a serious emotional upset. Because she has had no opportunity to develop real attachment to her father, stepmother, and half-brother, we think there is genuine danger, if she is forced into that home under the circumstances related, of an unfortunate antagonism between herself and the other members of the family. Instead of the love and devotion which might be expected to develop between herself and her handicapped brother, there might develop something quite different. We think under the circumstances related, the stepmother would be faced with a difficult task of winning the confidence and love of this little girl, however good her intentions and however sincere her efforts. The Chancellor gave careful consideration to the problems involved in this case and his opinion is a thorough and thoughtful one. The court concludes that the determination reached by the Chancellor was correct. We note that in reserving jurisdiction over the child, he expressed the view, in which we concur, that the little girl should be encouraged to visit in her father's home and all parties to this cause have been warned that no attempt to alienate the affections of the child from her father or from her grandparents will be tolerated.

*Decree affirmed, with costs.*