466 A.2d 58

**Bernadette Grace BOOTHE**

v.

**Henry F. BOOTHE et ux.**

**No. 1821, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Oct. 11, 1983.

2

Willard L. Broms, Leonardtown, for appellant.

David F. Jenny, Leonardtown, for appellees.

Argued before LOWE, GARRITY and GETTY, JJ.

LOWE, Judge.

When Bernadette Grace Boothe (appellant) was divorced from Thomas Joseph Boothe, Sr. on November 21, 1980, the custody of their four children ranging from 4 to 13 years-of-age was granted to their father, with the reluctant acquiescence of appellant. With the help of his parents who lived nearby on the farm upon which his own home was built, Mr. Boothe, Sr. raised his children in the rural atmosphere of their home. Despite appellant's admitted meretricious personal life which appears to have succeeded the divorce, she was permitted liberal visitation privileges. There was no evidence that she was required to contribute to her children's support yet she gave gifts to them and voluntarily continued to be responsible for their dental care and some social activities. She availed herself of every opportunity for visitation.

Their paternal grandmother, however, did some of the chores of child raising for these children such as mending their clothes, walking them to the school bus, taking them to the doctor if needed, providing meals on weekends and other tasks customarily done by a mother. The children also spent

a great deal of time at their paternal grandparents' farm-house, near the children's home which had been built on part of the grandparents' farm.

On June 13, 1982, Thomas Joseph Boothe, Sr. was killed in an automobile accident. Despite the mother's express desire to assume custody of the children (she propitiously used more discretion in her living arrangements by obtaining a trailer to house the children out of her paramour's presence), the grandparents obtained and retained physical custody of the children. The grandparents filed a petition for custody on June 14, 1982, and the appellant counterfiled for custody of her children on June 25, 1982. A hearing on the issue of temporary custody was held on August 5, 1982. On September 3, 1982, there was a custody hearing in open court to determine who would have custody of the children. This concluded in judgment by the Circuit Court for St. Mary's County in favor of the grandparents, from which appellant mother has appealed.

The record reflects a deeply loving and caring young mother who maintained close contact with her children. Although concerned over the children's need for discipline, she is averse to severe physical punishment which she fears may be the custom of the paternal grandparents. The mother's living facilities consist of a trailer and yard in a trailer park, neatly kept and clean, but somewhat confining for a family of five.

The sexagenarian grandparents have a farmhouse with more interior space than the trailer and with 76 acres surrounding it. Their conceded love and concern for the children was exhibited by their care for them even while they were in the custody of their son. The grandparents are, to phrase it kindly, philosophically more stoic, perhaps, than the mother; certainly less averse than the mother to corporal punishment.[1] But the geographic "environment",

---

1. There is evidence that the grandparents have exhibited a belt with their son's name on it, used as a symbol of how their children were

which always included the grandparents in some degree of an *in loco parentis* relationship is that to which the children have become accustomed, having been in varying degrees exposed to both throughout their lives.

In determining the best interest of these children, the chancellor balanced the environmental stability concept described in *Sartoph v. Sartoph,* 31 Md.App. 58, 354 A.2d 467 (1976), against the natural parent presumption explicated in *Kartman v. Kartman,* 163 Md. 19, 161 A. 269 (1932), and decided that under the circumstances of this case, the children's best interest lay in their remaining in the rural environment maintained by the paternal grandparents.

The appellant complains to us that the legal presumption of the children's welfare being best served with their natural parent was not overcome in this case. She points out that in *Ross v. Hoffman,* 280 Md. 172, 372 A.2d 582 (1977), the Court of Appeals through Judge Digges noted that:

"Therefore, in parent-third party disputes over custody, *it is only upon a determination by the equity court that the parent is unfit or that there are exceptional circumstances which make custody in the parent detrimental to the best interest of the child, that the court need inquire into the best interest of the child in order to make a proper custodial disposition.*" *Id.* at 179, 372 A.2d 582 (emphasis added).

Appellant points out that the judge expressly found that she was not unfit. After analyzing many of the cases addressing the natural parent presumption, she contended that the circumstances here are not so "exceptional" as to "make custody in the parent detrimental to the best interest of the child". Only such circumstances, she contends, would have

raised and these grandchildren would be raised. They suggest that it is more symbolically preventative than liberally applied.

The grandparents should be instructed (and monitored) to avoid punishing these children in any manner suggestive of abuse. While there is no evidence of such violence, the threatening presence of a belt maintained solely for whipping purposes instills as much concern in this Court as it is intended to instill in the children.

permitted a custodial disposition predicated upon a "best interest of the children" determination.

Her argument is persuasive, especially upon review of the record of her maternal virtues and ties, which continued during and after her marital estrangement. Clearly she has surpassed exception No. 1 (parental unfitness), as decided by the court. Just as clearly she has neither abandoned her children nor neglected to see them during any period of permitted visitation as has so often been persuasively "exceptional" in the older cases. *E.g., Trenton v. Christ,* 216 Md. 418, 140 A.2d 660 (1958); *Ross v. Pick,* 199 Md. 341, 86 A.2d 463 (1952); *Dietrich v. Anderson,* 185 Md. 103, 43 A.2d 186 (1945); *Piotrowski v. State,* 179 Md. 377, 18 A.2d 199 (1941); and *Ross v. Hoffman, supra.* Even her consensual acquiescence to paternal custody was a difficult acknowledgment of the children's best interest at the time, in permitting them to stay in the marital home with their father after the divorce.

It is ironically unfair, perhaps, that that difficult decision made then to benefit the children is part of the "exceptional" circumstance that haunts her still nearly three years later. The fact remains, however, that whether the custody during the past two or three years had derived from her well-purposed acquiescence or judicial determination, the raising of these children by their father with the help of the paternal grandparents, without the day-to-day guidance and help of their natural mother, is an exceptional circumstance. When viewed in light of uprooting their presently customary and stable environment and rural freedom in exchange for the unaccustomed confinement of a trailer park, supervised by a mother who has been for two years a looked-forward-to-visitor, the transition cannot be said to be undetrimental as a matter of law. The trial judge found that such an uprooting transition depriving the children of the only recognizable stability left to them after the tragic death of their father, would be detrimental to their best interests and we cannot gainsay that. Md.Rule 1086.

We are aware that the custody, care and nurture of the child resides first with its parents who can and should supply it with intangibles for which there is no substitute. The importance of a family cannot be overemphasized. See *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972). In the eyes of these children the parental stability of their family has been destroyed twice, by divorce and then by death. Appellant contends that:

> "There comes a time for all of us, figuratively, and in this case literally, when we must 'leave the farm'."

But the judge found implicitly that the only stability apparent to the children was "the farm". The grandparents were an integral part of the farm environment, the children's only constant lifeline. It would hardly be in their best interest to snatch away that sound lifeboat which took them aboard and suddenly substitute the uncertain lifeline of their mother, with whom they have not lived for two years, to raise them in a new trailer-court environment and support them with a job dependent primarily upon gratuities. This appears to have been the judge's reasoning. From the cold record prior to *Davis v. Davis,* 280 Md. 119, 372 A.2d 231 (1977) we may not have reached the same result. We have, however, frequently recognized the importance of the chancellor's opportunity to observe the witnesses and draw inferences therefrom that are not cognizable in a cold record. *Sullivan v. Sullivan,* 199 Md. 594, 600–501, 87 A.2d 604 (1952). We also note in this particular case that the chancellor had "known both families for many years". As Judge Frankfurter pointed out in *Watts v. Indiana,* 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949),

> "there comes a point where the Court should not be ignorant as judges of what we know as men."

Having found no error in matters of law and no clear error in factual findings, the judge's discretion in reaching the conclusion he did, in light of his ability to view the witness-

es, etc., should not be disturbed. *Davis v. Davis, supra* 280 Md. at 125–126, 372 A.2d 231.

While it is important that these children have the environmental stability addressed by the court, it is equally important that they continue to be lavished with their mother's love. We, therefore, join the judge in admonishing these parties that they must lay aside their personal bitterness and permit these children to obtain the best that both have to offer them.

■ If, however, the bitterness is permitted to erect a wall between the mother and her children, the grandparents should realize that by permitting to be ingrained in the child such ugliness, a substantial factor is put in the balance when weighing the already closely balanced "best interest" of these youngsters. The court shall continue to have jurisdiction over their custody and we suggest a careful monitoring to assure that which it has found to be in their best interest remains so. As the Court of Appeals pointed out in *Kartman, supra* 163 Md. at 22, 161 A. 269, quoting *Petition of Frank B. Bort,* 25 Kan. 308:

> " 'When the custody of children is the question, . . . the best interest of the children is the paramount fact. Rights of father and mother sink into insignificance before that. Even when father and mother are living together, a court has the power, if the best interests of the child require it, to take it away from both parents, and commit the custody to a third person. In other words, a court of chancery stands as a guardian of all children, and may interefere at any time and in any way to protect and advance their welfare and interests.' "

We affirm the trial judge and commend his concern; but admonish him to continue his surveillance.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.