567 A.2d 509

Margaret **PASTORE**

v.

**William C. SHARP et ux.**

**No. 530, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Dec. 29, 1989.

Certiorari Denied April 17, 1990.

William R. Leahy and Joseph V. Rohr, Jr. (Legal Aid Bureau, Inc., on the brief), Annapolis, for appellant.

William M. Ferris and Lynn T. Krause (Michaelson, Krause & Ferris, on the brief), Annapolis, for appellees.

Submitted before ALPERT, ROBERT M. BELL and FISCHER, JJ.

ALPERT, Judge.

This case involves a dispute over the custody of a five-year-old boy, Nicholas Pastore. Appellant, Margaret Pastore, is his natural mother; appellees are Nicholas's paternal aunt and uncle, Nancy and William Sharp.

Appellant married Peter Pastore in 1977 and gave birth to two boys, Vincent and Nicholas. Both appellant and Peter had severe drug dependencies, appellant's lasting for twenty years. In late May 1986, appellant called Peter's sister, Loretta Lambert, asking for help. Loretta and another of Peter's sisters, Nancy Sharp, traveled to the Pastores' home in New York, where they found appellant reduced to looking "like a concentration camp survivor," and Peter having drug-related convulsions. The Pastores and Peter's sisters agreed the next day, June 1, 1986, that the Lamberts and the Sharps would take the children back to Maryland temporarily. Vincent stayed with the Lamberts, while Nicholas stayed with the Sharps.

Appellant came to Maryland a month later on July 8, 1986, for Nicholas's second birthday. She attempted to regain custody of both her children, but only the Lamberts acquiesced. The Sharps refused to allow appellant to take Nicholas. After appellant returned to New York with Vincent, appellees sought and received temporary custody of Nicholas through an ex parte petition in the Circuit Court for Anne Arundel County. In its July 23, 1986 order, the court ruled that Nicholas could not be taken out of Maryland.

Appellant entered a drug rehabilitation program and has been drug-free since September 1986. She separated from her husband and moved in with her parents. On December 8, 1986, appellant petitioned a New York family court for custody of Nicholas and Vincent. The New York court awarded appellant custody of Vincent. It dismissed her petition for Nicholas's custody, however, declaring that it lacked jurisdiction because the child had been outside of New York for more than six months.

On March 9, 1987, appellant moved to dismiss appellees' July 1986 complaint for custody in the Maryland court, which still was pending because appellant had not been served with the complaint until January 13, 1987. The circuit court denied appellant's motion on April 21, 1987.

Appellant filed a counter complaint for custody of Nicholas on August 23, 1988. Beginning in November 1988 the court permitted appellant to take Nicholas on overnight visits to New York.

The matter came on for trial in February 1989 (Cawood, J.). Nicholas's day care teacher testified that the child, who usually was "well adjusted, very happy, content," acted very strangely following his first overnight visit with appellant. He seemed "very upset and very excited," and he raised his middle finger at one of the other children. Nicholas told the teacher he had learned the gesture from appellant. He also said appellant had told him that he did not like the day care center and that appellees did not love him.

Testimony at the trial revealed that appellant is involved in New York's workfare program, in which she receives public assistance in exchange for part-time work in the kitchen of a senior citizen center. Appellant lives in an efficiency apartment with a sliding plastic wall that divides the one large room into two. She is very involved in the church she joined shortly after she stopped using drugs. Appellant's mother-in-law, Louise Pastore, testified that appellant always has needed support from others around her.

Appellant testified that, if she were awarded custody of Nicholas, she would stop working entirely until the child entered school this year. According to her testimony, she has spoken to the New York Department of Labor about taking courses to upgrade her skills in hotel management, the field in which she once worked. She said she eventually will return to a full-time job outside the home.

Dr. Michael Gombatz, a licensed psychologist who evaluated appellant, Nicholas, and Vincent, testified (1) that

appellant had no significant psychological problems; (2) that appellant and Nicholas had a healthy relationship; (3) that neither Nicholas nor Vincent had any mental disorder or personality problem; and (4) that Nicholas and Vincent had a close bond. Gombatz recommended that custody be returned to appellant.

Lynn Westergard, a social worker with the Anne Arundel County Department of Social Services (DSS), testified that appellant's interaction with her sons was very appropriate. Westergard also recommended that appellant be awarded custody of Nicholas. She suggested, however, that appellant remain in counseling and that the placement be supervised by the New York Protective Services Division for at least six months.

Appellees are a middle-class, two-income couple, with two children of their own. They own their own three-bedroom house in Severn, Maryland. A number of witnesses testified that appellees were very good parents who had developed close bonds with Nicholas.

Finally, it came out during appellant's testimony that her December 1986 custody petition in the New York court was incorrect in two significant respects. On the petition itself, she listed the date on which she gave custody of Nicholas to appellees as June 8, 1986, rather than the correct date of June 1, 1986. If the true date had been June 8, the New York court would have had jurisdiction. Appellant's other incorrect statement was on the supporting affidavit, where she stated that she had not participated in any other litigation concerning Nicholas, and had no knowledge of such a proceeding. Lynn Westergard, the DSS social worker, however, testified that she had told appellant about the Maryland custody case in July or August of 1986, months before appellant's December 1986 affidavit.

On March 1, 1989, Judge Cawood issued an Opinion and Order granting permanent custody of Nicholas to appellees. In that Opinion and Order the judge wrote, "[W]e do not believe it would be in his best interests to be removed from

the custody of the Sharps. Unfortunately, all the damage done in twenty years cannot always be corrected in two."

Appellant timely filed her notice of appeal and the parties raise several issues which we restate as follows:

1. Are non-parents who are attempting to gain custody of a child from the child's natural parent required to show only that custody with the non-parent is "in the child's best interest," or are the non-parents required to show either that the natural parent is "unfit" or that "exceptional circumstances exist which would make such custody detrimental to the best interests of the child"?

2. If unfitness or exceptional circumstances must be established, did the trial court correctly find such unfitness or exceptional circumstances?

3. Was it an abuse of discretion for the court to reject the recommendations of a licensed psychologist and a DSS social worker that custody be awarded to the natural mother?

4. Did the court err by placing undue weight on the appellant's lack of wealth?

## 1. *The Correct Standard*

Appellees argue that the true standard for child custody in Maryland is the best interest of the child and that, "if the case law is, somehow, to the contrary, this Honorable Court should change the case law in the true interest of justice." While it is indeed true that the "best interests of the child standard" continues to reign, where there is a custody contest between a natural parent and a third party, there is a rebuttable presumption in favor of the natural parent. Only last year we said in *Newkirk v. Newkirk*, 73 Md.App. 588, 535 A.2d 947 (1988):

Although the "best interest of the child" standard prevails, in this State there is a *prima facie* presumption that a child's welfare is best served in the care and custody of its natural parents rather than a third party.

This presumption is overcome, however, if the parent is unfit to have custody or if exceptional circumstances exist which would make such custody detrimental to the best interests of the child. Fam.Law Code Ann. (1984) § 5–201; *Ross v. Hoffman,* 280 Md. [172,] at 178–79, 372 A.2d 582 [ (1977) ].

*Id.* at 593, 535 A.2d 947. *Newkirk* is dispositive of the first issue.

### 2. *The Trial Court's Application of the Standard*

■ Appellant contends that we should reverse the trial court because neither the trial judge's order nor the record indicated that appellant was unfit or that exceptional circumstances existed that would make it harmful for Nicholas to be in her custody. According to appellant, the court erroneously applied the best interest of the child standard.

We disagree. Although the judge did state in his order that he did not think it would be in the child's best interests to remove him from the appellee's custody, that standard was correctly applied in that the trial court found that the parental presumption was overcome due to unfitness and exceptional circumstances. We note, first, that appellant's counsel ably presented the correct standard in his closing argument. Thus, the judge clearly was aware of the standard. We also believe the judge correctly found (1) that appellant was unfit to take custody of Nicholas, and (2) that exceptional circumstances existed which made custody detrimental to Nicholas's best interest.

We have found no precise definition of the term "fitness" in Maryland statutory or case law. In 67A C.J.S. *Parent & Child* § 23(b), at 241–42, however, we find the following discussion, which is instructive:

The factors used in assessing fitness for having custody of a child include such parental characteristics as age, stability, and the capacity and interest of a parent to provide for the emotional, social, moral, material, and educational needs of the child....

(Footnotes omitted.) Applying these factors to the trial judge's findings in the instant case, it is clear he found appellant unfit. With regard to appellant's stability, the judge found (1) that she always was in need of some kind of support and (2) that "the responsibility of taking on another child is more than she can handle." As for appellant's capacity to provide for Nicholas's social, moral, and educational needs, the judge stated that it was "cause for great concern" that appellant apparently persuaded Nicholas to say he did not like his day care center, and that the child learned an obscene gesture from her. The judge also clearly questioned appellant's honesty when he twice mentioned that her December 1986 petition to the New York court "was just not true in many important particulars." Regarding appellant's capacity to provide for the child's material needs, the judge found that she was "in a partial welfare program, renting a room barely large enough for herself and her other son," and "her plans for the future were vague at best." The record supports each of these findings.

On the issue of "exceptional circumstances," Maryland case law gives us very definite guidance. In *Ross v. Hoffman*, 280 Md. 172, 191, 372 A.2d 582 (1977), the Court of Appeals stated:

> The factors which emerge from our prior decisions which may be of probative value in determining the existence of exceptional circumstances include the length of time the child has been away from the biological parent, the age of the child when care was assumed by the third party, the possible emotional effect on the child of a change of custody, the period of time which elapsed before the parent sought to reclaim the child, the nature and strength of the ties between the child and the third party custodian, the intensity and genuineness of the parent's desire to have the child, the stability and certainty as to the child's future in the custody of the parent.

As the *Ross* court noted, all of the factors do not have to be present to find exceptional circumstances. *Id.* at 192, 372

A.2d 582. We believe the trial judge found a number of the factors to exist and thus correctly found exceptional circumstances making custody detrimental to Nicholas's best interests. He found that Nicholas had been in appellees' custody, and thus separated from appellant, for "over two years," a long time when one considers that the child was not even five years old at the time of the hearing. The judge also found that, except for attempts to regain custody a month after she relinquished it, when "she was in no shape to accept it," and then again six months later, appellant did not seek custody or visitation until more than two years after she had given appellees custody of Nicholas. The judge also found that appellees had exercised "outstanding care for Nicholas" and had grown "extremely attached to him." And, finally, the trial judge clearly found that Nicholas's future would lack stability and certainty if he were placed with appellant. According to the judge, appellant's situation is "tenuous," her apartment is "barely large enough for herself and her other son," and "her plans for the future are vague at best." Again, there is ample evidence in the record to support these findings.

### 3. *Recommendations of the Psychologist and the Social Worker*

Appellant argues that the trial judge abused his discretion by choosing not to follow the psychologist and social worker's recommendations that custody be awarded to appellant. We disagree. As Chief Judge Gilbert stated for this court in *Montgomery County Dept. of Social Serv. v. Sanders*, 38 Md.App. 406, 423, 381 A.2d 1154 (1978), a court in a custody case "is entitled to weigh [evidence offered by social workers, psychologists, and psychiatrists] along with contradictory testimony and its own observations." Thus, the trial judge did not abuse his discretion by choosing not to follow the recommendations of the psychologist and the social worker where, as here, other evidence and the court's own perceptions dictated otherwise.

### 4. *Appellant's Lack of Wealth*

Finally, appellant contends that the trial court erred as a matter of law in basing its decision in part on appellant's receipt of public assistance and her lack of a large apartment. In support of this argument, appellant cites, *inter alia,* a footnote in *Ross v. Hoffman, supra,* in which the Court of Appeals stated that a "court may not, under the guise of the best interest standard weigh the material advantages offered by the adverse parties." 280 Md. at 191 n. 6, 372 A.2d 582. It is clear that the trial judge's decision was not predicated upon the *mere* weighing of the material advantages of the parties. In his opinion he did not mention appellees' income or three-bedroom home. When he mentioned appellant's receipt of public assistance and lack of a large apartment, he did so within a general discussion of "exceptional circumstances" and her fitness to have custody of Nicholas.

Material and environmental opportunities are factors that are appropriately considered and weighed along with other numerous factors. In *Boothe v. Boothe,* 56 Md.App. 1, 466 A.2d 58 (1983), a divorced couple's four children had been raised on a farm by their father and paternal grandparents. When the father died, the natural mother, who lived in a house trailer, sought custody of the children. In affirming the trial court's award of custody to the grandparents, we said,

> When viewed in light of uprooting their presently customary and stable environment and rural freedom in exchange for the unaccustomed confinement of a trailer park, supervised by a mother who has been for two years a looked-forward-to-visitor, the transition cannot be said to be undetrimental as a matter of law.

*Id.* at 5, 466 A.2d 58.

*Montgomery County Dept. of Soc. Serv. v. Sanders, supra,* is another post-*Ross* case. There we stated that

> the court examines numerous factors and weighs the advantages and disadvantages of the alternative environ-

ments.... The criteria for judicial determination includes, but is not limited to, ... 6) material opportunities affecting the future life of the child, *Thumma v. Hartsook,* [239 Md. 38, 210 A.2d 151 (1965) ]; *Butler v. Perry,* [210 Md. 332, 123 A.2d 453 (1956) ]; *Cockerham v. The Children's Aid Soc'y of Cecil County,* 185 Md. 97, 43 A.2d 197 (1945)....

While the court considers all the above factors, it will generally not weigh any one to the exclusion of all others. The court should examine the totality of the situation in the alternative environments and avoid focusing on any single factor such as the financial situation ... or the length of separation.

38 Md. at 420–21, 381 A.2d 1154. According to the *Sanders* court, therefore, a trial court may consider the material opportunities offered by each party. The court simply must consider other factors as well. *See also Thumma v. Hartsook,* 239 Md. 38, 42, 210 A.2d 151 (1965) (trial court did not err in granting temporary custody to non-parents because situation of natural parents was "financially, with respect to housing, and otherwise ... completely unstable"); *McClary v. Follett, Jr.,* 226 Md. 436, 442, 174 A.2d 66 (1961) (fact that father seeking custody of his son had not been a high wage earner did not, by itself, constitute unfitness); *Butler v. Perry,* 210 Md. 332, 341, 123 A.2d 453 (1955) (material advantages available in the home of one party in a custody dispute, "although important to be considered, are not decisive").

In *Ross v. Hoffman, supra,* the Court of Appeals explained that

[t]he ultimate conclusion as to the custody of a child is within the sound discretion of the chancellor. That conclusion is neither bound by the strictures of the clearly erroneous rule, that rule applying only to factual findings of the chancellor in reaching the conclusion, nor is it a matter of the best judgment of the reviewing court. It is not enough that the appellate court find that the chancellor was merely mistaken in order to set aside the custody

award. Rather, the appellate court must determine that the judicial discretion the chancellor exercised was clearly abused.

280 Md. at 186, 372 A.2d 582. Under the totality of the circumstances, we conclude that the trial judge did not clearly abuse his judicial discretion in awarding custody of Nicholas to appellees. *Newkirk v. Newkirk, supra,* 73 Md.App. at 595–96, 535 A.2d 947.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

ROBERT M. BELL, Judge, dissenting.

The majority affirms the judgment of the Circuit Court for Anne Arundel County continuing custody of the minor subject of this litigation in appellees, his paternal aunt and uncle. In so doing, it holds that the trial court applied the proper standard in deciding the issue and that its factual findings are supported by the evidence in the record. I believe that the majority is wrong on both counts. Consequently, I would reverse. It is for that reason that I dissent.

I agree with the majority that where the contest is between a natural parent and a third party, the proper standard is whether the natural parent is unfit or exceptional circumstances exist which make custody in the natural parent detrimental to the best interest of the child. *See Newkirk v. Newkirk,* 73 Md.App. 588, 593, 535 A.2d 947 (1988). I do not agree that the court applied the proper standard.

Relying on the fact that appellant's counsel "ably presented the standard in his closing argument", the majority concludes that "the judge clearly was aware of the standard" and, applying it, found both that appellant was unfit to have custody of her child and that exceptional circumstances militated against appellant having custody. Perusal of the trial court's written opinion belies these conclusions. First of all, the opinion does not explicitly

state the correct standard. Moreover, nowhere in the opinion is it specifically stated that appellant is unfit to have the care and custody of the minor child.

When stating its disagreement with the Anne Arundel County Department of Social Services's recommendation that appellant be awarded custody, the court did state:

> Although this case is a close and difficult one, we cannot agree. Mrs. Pastore's situation impresses us as a tenuous one. She is in a partial welfare program, renting a room barely large enough for herself and her other son. She is an intelligent woman, but her plans for the future are vague at best. As her mother-in-law pointed out, she was always in need of some support. Her church quite properly supplies it at the present time, but we think the responsibility of taking on another child is more than she can handle.

Later, after noting its concern about behavior exhibited by the child after visitation with appellant—the child gave one of his nursery mates "the finger" and had been persuaded by his mother to say that he did not like his day care center—the court opined:

> While we applaud Mrs. Pastore's attempts at rehabilitation, we do not believe it would be in his [Nicholas] best interest to be removed from the custody of the Sharps. Unfortunately, all the damage done in twenty years cannot always be corrected in two.

While, in candor, it may be argued that, implicit in these comments, is a finding of unfitness, the evidence presented in the case is all to the contrary. The Anne Arundel County Department of Social Services recommended that appellant be given custody of the minor child. It did so after visitation, both here and on Long Island, and after interviewing all the parties. The evidence also reflected that appellant was drug free, and had been for two years, and was receiving support from her church. Furthermore, the evidence showed that appellant was adequately parenting her other son. On the opposite side of the ledger is only the

court's "thought" and belief as to what appellant's situation is and what she can handle.

With regard to "exceptional circumstances", the majority focuses on the length of time that the minor child has been separated from his mother;[1] the limited attempts appellant made to regain custody of the minor child;[2] the "outstanding care" given the minor child by appellees; and the projected lack of stability and certainty that would ensue were the child placed with appellant. It maintains that the record, specifically the trial court's references to the appellant's situation as "tenuous", to her apartment as "barely large enough for herself and her other son", and to appellant's plans for the future as "vague at best", supports these findings. Again, I do not agree. As with the unfitness finding, the only support in the record for the existence of exceptional circumstances consists of the court's conjecture.

---

[1] It is interesting to note that, as to this, appellees are largely responsible. They sought custody, on a temporary basis, in Maryland, without any effort to notify appellant, who was, as they knew, in New York, that they were doing so. As a result of that order, all of appellant's visitation rights were eliminated and not reinstated until more than a year later, when appellant first filed a counter complaint for custody in the Circuit Court for Anne Arundel County.

[2] The trial court acknowledges that appellant was "admittedly hampered by lack of funds" during the period during which she sought to rehabilitate herself. Therefore, it is somewhat misleading and unfair for the trial court to rely upon, and the majority to accept, the lack of effort on the part of appellant to seek custody or visitation until August 1988. I think it is to appellant's credit that she made the effort to obtain custody when she was best able to do so, especially after her initial efforts were unsuccessful.