635 A.2d 82

**Wendy Lee BURROWS**

v.

**Ruben Clifton SANDERS, et al.**

**No. 676, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 7, 1994.

Elise Davis of Chestertown, for appellant.

Dexter M. Thompson, Jr., Elkton, for appellee.

Argued before GARRITY, BLOOM and MURPHY, JJ.

GARRITY, Judge.

This appeal questions the chancellor's custody award of a seven-year-old boy to his paternal grandmother and paternal step-grandfather, rather than to his mother.

## FACTS

Tommy was born September 12, 1985 to Wendy Lee Buerkle (now Wendy Burrows), appellant, and Thomas Duff, Sr. Ms. Buerkle was approximately sixteen years old at Tommy's birth. Thomas Duff, Sr. is not a party to these custody proceedings. From the time of his birth until July of 1989, Tommy, his mother, and sometimes his father stayed in the home of Mr. Duff's mother, Emma Sanders, and her husband, Ruben Clifton Sanders, appellees. Much of the responsibility for the child's physical and emotional care was assumed by the Sanders family. In July of 1989, when Tommy was three, Ms. Burrows left the Sanders' household and moved in with Mr. Burrows, whom she subsequently married. Tommy remained with the Sanders. Three months after her departure, Ms. Burrows began to see Tommy on a regular basis. Two years after her departure, Ms. Burrows attempted to reestablish custody. At the time the custody hearing was conducted on February 1, 1993, Tommy remained in the physical custody of the Sanders, but Ms. Burrows had Tommy with her every

other weekend as she had for the past three and one-half years. The Circuit Court for Cecil County (Cole, J.) awarded custody to the grandparents and awarded Ms. Burrows visitation three weekends a month and two months in the summer, plus holidays. Ms. Burrows appeals, raising three issues:

1. Whether the chancellor erred in admitting the deposition testimony of Dr. Ruttenberg.

2. Whether the facts supported the finding of exceptional circumstances.

3. Whether the chancellor's award of custody to the grandparents was an abuse of discretion.

## DISCUSSION OF LAW

*Admission of the Deposition Testimony of Dr. Ruttenberg*

Appellant objects to the admission of testimony of Dr. Ruttenberg, a psychiatrist. The objection was that he had only seen the child for forty-five minutes and the grandparents for fifteen minutes and, therefore, had an inadequate foundation to form an opinion regarding the best interest of the child. The chancellor made clear, however, that the determination of what was in the best interest of the child was the court's decision, not the expert's. Further, the deposition testimony was offered with the limitation that the expert had spent a short period of time with the child.

Upon ruling, the chancellor acknowledged that the psychiatrist only saw the child for forty-five minutes but that "he picked up some things that the evidence bears out. . . . I am not saying he's in a position to say who has the best interest of the child . . ." After reviewing a few of the doctor's findings, the chancellor remarked that "I certainly find that also and these are things that the evidence bears out, so the doctor is right on some of these things." All this was preceded by five pages of oral opinion containing findings made by the chancellor totally independent from the doctor's deposition.

Although forty-five minutes may be a short period of time in which to interview a child in a custody case, it is

beyond the capability of this, or any court, to establish the precise amount of time necessary for an expert to gather sufficient facts to form an opinion. The doctor interviewed the child and, therefore, had some factual basis for his opinions.

■ Expert testimony is admissible if it will aid the fact finder and will only be grounds for reversal if it is founded on an error of law or some serious mistake or if the trial court clearly abused its discretion. *Radman v. Harold,* 279 Md. 167, 173, 367 A.2d 472 (1977). We hold that the chancellor did not abuse his discretion in admitting the deposition of Dr. Ruttenberg into evidence.

*The Chancellor's Award of Custody to the Grandparents*

■ As the second and third issues are so closely related, we will address them as one issue, namely, did the chancellor properly support his finding of exceptional circumstances when awarding custody to the grandparents. Our standard of review as to factual findings is the "clearly erroneous" rule, and the chancellor's decision as to custody will not be disturbed absent a clear abuse of discretion. *Ross v. Hoffman,* 280 Md. 172, 185–86, 372 A.2d 582 (1977).

■ In custody proceedings, there is a long standing rebuttable preference of natural parents over third parties. *Ross v. Pick,* 199 Md. 341, 351, 86 A.2d 463 (1952). Generally, the presumption is that it is in the best interest of children to be in the custody of their natural parents vis-à-vis a third party. *Hoffman,* 280 Md. at 178, 372 A.2d 582. The presumption may be rebutted, however, by sufficient evidence to support a finding of either (1) parental unfitness or (2) the existence of exceptional circumstances, such that parental custody would be detrimental to the best interest of the child. *Id.* Chancellor Cole found that neither party was an unfit custodian and that this case would turn on whether there were extraordinary circumstances that would rebut the presumption that the mother should be preferred as custodian.

In determining the best interest of the child, the chancellor considers the child's training, development, morals, and happiness. *Pick,* 199 Md. at 351, 86 A.2d 463. The child's own wishes may be consulted and given weight if the child is of sufficient age and capacity to form a rational judgment, and the child's desire should be given special consideration where the parents have voluntarily allowed him to live in the family of others for a considerable length of time. *Id.,* 199 Md. at 353–54, 86 A.2d 463.

We have long supported decisions that a third party may be granted custody over the natural parent if that is in the child's best interest. *Hoffman,* 280 Md. at 178, 372 A.2d 582 (physical custodian of child granted custody after caring for the child for approximately eight years); *Trenton v. Christ,* 216 Md. 418, 420–23, 140 A.2d 660 (1958) (while father was not unfit, ten-year-old daughter preferred to stay with grandparents in Maryland, with whom she had lived for the past six years, rather than move to Wisconsin); *Pick,* 199 Md. at 351–52, 86 A.2d 463 (reversed award of custody to mother of eleven-year-old child who had resided with third party for ten years because the mother had abandoned the child); *Dietrich v. Anderson,* 185 Md. 103, 116, 43 A.2d 186 (1945) (custody to foster parents—father admitted that at the child's birth he was unable to raise or care for the child and left the child in the care of foster parents for five years); *Piotrowski v. State,* 179 Md. 377, 381–83, 18 A.2d 199 (1941) (custody to grandmother who raised child for eight years, despite the fact that father was not unfit, because child was flourishing, happy, and might suffer emotionally due to a change from her present environment). Even where there is neither abandonment nor neglect for any period of time by the parent, an award to a third party over a parent may be upheld if it is in the child's best interest. *Boothe v. Boothe,* 56 Md.App. 1, 6–7, 466 A.2d 58 (1983) (custodial father killed and grandparents awarded custody over natural mother).

Appellate courts may uphold findings of exceptional circumstances and an award of custody to third parties where

the child has experienced some separation from the natural parent; where the third party has provided for the child's emotional and physical needs over a significant length of time; where the child has formed a strong attachment to the third party so that there is a possibility of emotional effect if custody is changed; and where the child is thriving under the current custody of the third party. *Hoffman,* 280 Md. at 187–93, 372 A.2d 582.

> [T]he best interest of the children is the paramount fact. Rights of father and mother sink into insignificance before that. . . . [W]hen new ties have been formed and a certain current given to the child's life and thought, much attention should be paid to the probabilities of a benefit to the child from the change. It is an obvious fact, that ties of blood weaken, and ties of companionship strengthen, by lapse of time; and the prosperity and welfare of the child depend on the number and strength of these ties, as well as on the ability to do all which the promptings of these ties compel.

*Dietrich,* 185 Md. at 118–19, 43 A.2d 186. (citations omitted).

In essence, a court of chancery stands as the guardian of all children. In exercising its crucial function, the court "may interfere at any time and in any way to protect and advance their welfare and interest." *Boothe,* 56 Md.App. at 7, 466 A.2d 58 (citations omitted).

The chancellor is faced with many difficult issues when deciding custody matters, particularly where both parties appear to be fit custodians, and we will give due deference to the chancellor's opportunity to observe all of the witnesses and weigh issues regarding credibility. *See Boothe,* 56 Md. App. at 6, 466 A.2d 58. In the matter before us, it is clear that the chancellor thoroughly and sensitively considered all of the factual evidence before him. The chancellor stated his reasons for finding exceptional circumstances as follows:

> The child is doing very well in school, exceptional student in a lot of respects. . . . The child has been in the home of the Sanders, the grandparents, since one week or one month after birth . . . roughly seven plus years. . . . The Sanders'

home has provided stability for the child. The Sanders have a good relationship. All needs are met and there's religious training. The Sanders have a good home. They have a good plan for the child and the child is being, is developing properly.... There's a close relationship with the grandparents.... The mother and [Mr. Burrow's] home is a little less stable than the grandparents as they've moved around a lot.... There is a point made that ... [the mother] is a little lax in discipline ... they are more on friend to friend, buddy-type thing than mother, child.... The emotional parents are the grandparents. That's where the stability and guidance came for the child.... The grandparents are involved with the child on day-to-day operations, have been since birth.... The [child had] no day-to-day contact with the [mother] and she took no action for roughly a two-year period to regain custody.... The primary support of the child has been with the grandparents, but the mother has done some.... The child prefers [the grandparents], according to the doctor's deposition, which the child related to the doctor.... [The doctor] opines that strict environment is better than loose environment or buddy-buddy environment. The evidence bears that out.... [The child] gets a sense of security with the status quo.... the status quo is not merely the stability at the grandparents', but it's also the visits and the participation by the mother.... [The child], emotionally ... says ... his grandparents are his real parents and certainly I agree with that. The evidence bears it out.... [S]o I think if you put all that together, you have extraordinary circumstances which would indicate custody should go to the grandparents.

For all the foregoing reasons, we hold that the chancellor did not abuse his discretion, and we affirm the award of custody as it is founded upon the application of sound principles of law and based upon factual findings that are not clearly erroneous. It is evident that the chancellor properly concluded that the sum of the parts is equal to its whole. In recognizing her excellent progress and potential to receive full

custody, we note that the chancellor awarded Ms. Burrows liberal visitation of three weekends a month and two months in the summer, plus some holidays. We strongly encourage the parties to refrain from any attempts to alienate the child's affections from either the mother or the grandparents. *See Trenton*, 216 Md. at 423, 140 A.2d 660.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.