797 A.2d 809

**Michael STULL**

v.

**Kristi STULL.**

**No. 878, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

May 3, 2002.

Michael D. Breads, Silver Spring, for appellant.

Stanley N. Tashoff, Gaithersburg, for appellee.

Argued before SALMON, DEBORAH S. EYLER, and RAYMOND G. THIEME, JR. (Ret'd, Specially Assigned), JJ.

THIEME, J.

Kristi Stull, the appellee, filed a complaint in the Circuit Court for Montgomery County for absolute divorce on the ground of adultery. Michael Stull, the appellant, answered and counter-complained. The appellee was awarded sole legal and physical custody of the parties' three children, and the appellant, who was found to have voluntarily impoverished himself, was ordered to pay $712 per month for child support. The appellant noted this appeal[1] and presents the following questions:

1. Did the trial court err in awarding sole legal and primary physical custody to the appellee?

2. Did the trial court err in finding that the appellant had voluntarily impoverished himself?

We answer "No" to the first question, "Yes" to the second, and explain.

---

1. The remaining divorce issue has not yet been heard. This appeal is under Md.Code (1998 Repl.Vol., 2001 Supp.), Courts and Judicial Proceedings Article, sec. 12–303(1).

## FACTS

The parties were married on May 29, 1993, in Montgomery County, Maryland, and are the parents of three children: Jorom, born February 1, 1994; Kaila, born November 9, 1995; and Nicholas, born February 24, 1998. The parties continually lived with the appellant's parents until May 2001, when the appellee left with the children.

The home of the appellant's parents was close to the children's school, day care, family, and friends. The parties and their youngest child slept in a room in the basement, and the older son and daughter shared a room upstairs. Since 1993 the appellee has worked as a teacher at the Olney Child Care Center, where she enrolled her children for day care and before and after school care, free of charge. She finished work between three and six o'clock in the evening during the week, and did not work on weekends.

Jorom and Kaila both attend Bellmont Elementary School. Nicholas, the youngest, is in the day care center where the appellee works and where she can see and check on him throughout the day. The appellee took Nicholas to the day care center until her hours changed, and she was required to leave for work earlier. Thereafter, the appellant took Nicholas to the day care center. Both parties testified to their care giving activities.

The appellant had worked as general manager for a Pizza Hut and, briefly, for Blockbuster. The appellant's work hours at Pizza Hut varied between 7:00 a.m. to 4:00 p.m. and 11:00 a.m. to 11:00 p.m. but generally were from 11:00 a.m. to 7:00 or 8:00 p.m., and occasionally he was required to work 6 or 7 days a week. The variation in his work schedule was caused by staffing problems. He had not worked for four months prior to the hearing.

### Standard of Review

One of the most recent of the numerous cases on the standard of review of a trial court's decision on the award of

custody is *Giffin v. Crane,* 351 Md. 133, 144–45, 716 A.2d 1029 (1998). In that case, the Court stated:

> The determination of which parent should be awarded custody of a minor child rests within the sound discretion of the trial court. The court's exercise of discretion must be guided first, and foremost, by what it believes would promote the child's best interest, which, in custody disputes, is of transcendent importance. Determining what is in the best interest of the child is by no means easy. As Chief Judge Gilbert speaking for the Court of Special Appeals in *[Montgomery County Department of Social Services et al. v.] Sanders,* [38 Md.App. 406, 414, 381 A.2d 1154 (1977),] recognized, "there is no such thing as a simple custody case." He further pointed out in that same case:
>
>> Unfortunately, there is no litmus paper test that provides a quick and relatively easy answer to custody matters. Present methods for determining a child's best interest are time-consuming, involve a multitude of intangible factors that ofttimes are ambiguous. The best interest standard is an amorphous notion, varying with each individual case, and resulting in its being open to attack as little more than judicial prognostication. The fact finder is called upon to evaluate the child's life chances in each of the homes competing for custody and then to predict with whom the child will be better off in the future. At the bottom line, what is in the child's best interest equals the fact finder's best guess.

(Citations omitted.) Thus, we must determine whether the chancellor abused her discretion.

### Discussion

■ The appellant argues that the trial court clearly abused its discretion in awarding residential custody to the appellee. He correctly quotes the following comments of the trial court:

> Nothing bad has happened to these children, They have been in a very loving home. They have had the benefit of what I call the village.

. . .

That home in Olney has been the only home the children have known, and I don't want to minimize it and I will say for the last time how important I think that home and that environment was for those children given the deterioration of their parents' relationship.

In spite of these findings, appellant argues that the trial court ordered the three minor children to be removed from this very loving home where they have always lived, from the benefit of the village, from their stable environment, in the face of their parents' deteriorating relationship, and placed in the home acquired by the appellee, just days before the trial, away from their school, away from their neighborhood, away from their friends.

The trial court found that

Mrs. Stull has been working since 1993 and has held down a job that has enabled her basically not only to have the children but to provide for childcare for them before and after school with the very able assistance of her mother-in-law.

I think the testimony is very clear that it is she who has primarily shouldered as between the two parents the parent responsibilities.

Thus, in resolving the conflict of testimony on this issue, the trial court clearly found the testimony of Ms. Stull to be the more credible, *i.e.*, she woke the children, got them ready for school or day care, laid out their clothes, transported them, bathed them, cooked for and fed them, and arranged for their homework and recreation, all with the assistance of Mrs. Stull, her mother-in-law. The appellant testified that he planned to become a real estate broker, a job which would necessitate his reliance on his mother to care for the children if he were awarded custody.

The appellant further argues that the trial court erred as a matter of law in strictly interpreting Md.Code, Family Law:

§ 5–203(a)(1)Natural guardianship; powers and duties of parents; support obligations of grandparents; award of custody to parent

(a) Natural guardianship.—

(1) The parents are the joint natural guardians of their minor child.

and

§ 5–203(b) Powers and duties of parents.—The parents of a minor child:

(1) are jointly and severally responsible for the child's support, care, nurture, welfare, and education;

The appellant argues that the parents are the joint natural guardians of a minor child and the parents are jointly and severally responsible for the child's support, care and nurture, welfare, and education. From this correct statement of law, the appellant then proceeds to posit that the trial court's strict interpretation of this statute led the court to improperly remove the minor children from the home, family, and environment they have known their whole lives at their grandparents' home and move them to one parent's new residence in a neighboring city by failing to consider the following relevant provision:

§ 5–201. Scope of subtitle. This subtitle does not affect any law that relates to the appointment of a third person as guardian of the person of a minor child because: (1) the child's parents are unsuitable; or (2) the child's interest would be affected adversely if the child remains under the natural guardianship of either of the child's parents.

The trial court ruled that

the primary responsibility for children falls not to the grandparents but to the parents. It is very clear I am reading from Section 5–203 of the Family Law Article and it simply says that the parents are the joint natural guardians of the minor child and the parents are jointly and severally responsible for the child's support, care and nurture, welfare and education. I intend to interpret that statute strictly it is the parents' responsibility.

The trial judge correctly relied on section 5–203 of the Family Law Article of the Annotated Code of Maryland (1999 Repl.Vol., 2001 Supp.), when she stated that the primary responsibility for children falls not to the grandparents but to the parents. The parents are the joint natural guardians of their children and are jointly and severally responsible for the children's support, care and nurture, welfare, and education. The appellant's reliance on *Boothe v. Boothe,* 56 Md.App. 1, 466 A.2d 58 (1983), which involved a situation where custody was awarded to the grandparents over the natural mother, is misplaced. The Court in *Boothe* applied the standard set forth in *Ross v. Hoffman,* 280 Md. 172, 178–79, 372 A.2d 582 (1977):

> [T]he best interest of the child standard is always determinative in child custody disputes. When the dispute is between a biological parent and a third party, it is presumed that the child's best interest is subserved by custody in the parent. That presumption is overcome and such custody will be denied if (a) the *parent is unfit* to have custody, or (b) if there are such *exceptional circumstances* as make such custody detrimental to the best interest of the child. Therefore, in parent-third party disputes over custody, it is only upon a determination by the equity court that the parent is unfit or that there are exceptional circumstances which make custody in the parent detrimental to the best interest of the child, that the court need inquire into the best interest of the child in order to make a proper custodial disposition.

(Emphasis supplied.)

In this case, there is neither an unfit mother nor exceptional circumstances to justify awarding custody to the paternal grandparents, who neither have requested custody nor are parties to this litigation.

In *Boothe,* the parents of the children in question had divorced, and the mother had agreed that the father should have custody. When the father died, the court was forced to determine an award of custody between a parent with whom

the children had not lived for two years, and a grandparent who had been *in loco parentis*. The instant case differs in three important ways: first, this case involves the award of custody between two parents; second, the appellee had been living with and raising her children; and third, the appellee has never agreed that the appellant should have custody. In any event, the appellant overstates the benefit of stability in the children's former home. Though the grandparents' home had been the children's home, the trial court found that this was not entirely a voluntary arrangement. The trial court found:

> The evidence is uncontroverted that she asked a number of times for her own home. They should be living independently.

We find no abuse of discretion in the award of custody to the appellee under the facts of the case *sub judice*.

### Voluntary Impoverishment

■ The trial court imputed to the appellant income of $47,000, which he earned in 2000 from his full-time employment with Pizza Hut and his part-time employment with Blockbuster.[2] The appellant argues that his intention was to move to a better job without going through a time of unemployment. Unfortunately, he was fired by Pizza Hut for falsifying documents, and he was not retained after his probation was completed at Blockbuster. He was denied unemployment insurance. Appellant admitted he had submitted only one employment application during the four months from the time of his termination up to the date of the hearing in this case.

The trial court found:

> With respect to child support, the appellant, there is a thing called voluntary impoverishment and I find in this case that

---

2.  Part-time work is often tenuous in prospect and short in duration. To include such income as a matter of course may ultimately result in a false picture of a party's economic self-sufficiency or security. *Tracey v. Tracey*, 328 Md. 380, 389, 614 A.2d 590, (1992).

you are voluntarily impoverished. I really can't make any other finding under the circumstances.

■ Thus, the trial court specifically found that the appellant had voluntarily impoverished himself and thus properly followed the dictates stated in *Reuter v. Reuter*, 102 Md.App. 212, 649 A.2d 24 (1994), that "before an award may be based on potential income, the court must hear evidence and make a specific finding that the party is voluntarily impoverished." *John O. v. Jane O.*, 90 Md.App. 406, 423, 601 A.2d 149 (1992). Although the various factors set forth in *John O.* must be considered by the trial court, neither we, nor the statute, require the trial court to articulate on the record its consideration of each and every factor when reaching its determination. *See Lapides v. Lapides*, 50 Md.App. 248, 252, 437 A.2d 251 (1981) ("The exercise of a judge's discretion is presumed to be correct, he is presumed to know the law, and is presumed to have performed his duties properly.")

■ However, before we reach the issue of the appellant's imputed income, we must first consider the trial court's determination that the appellant voluntarily impoverished himself. The court's factual findings will not be disturbed unless they are clearly erroneous, *In re Joshua W.*, 94 Md.App. 486, 491, 617 A.2d 1154 (1993), and rulings based on those findings must stand unless the court abused its discretion. *John O.*, 90 Md.App. at 423, 601 A.2d 149.

While the Code does not define the term "voluntarily impoverished," this Court initially defined the meaning of "voluntary impoverishment" in *John O.*, 90 Md.App. at 421, 601 A.2d 149, as follows:

> [I]n the context of a divorce proceeding, the term "voluntary impoverished" means: freely, or by an act of choice, to reduce oneself to poverty or deprive oneself of resources *with the intention of avoiding child support of spousal obligations.*

(Emphasis supplied.) The definition was next amplified by *Goldberger v. Goldberger*, 96 Md.App. 313, 327, 624 A.2d 1328 (1993): "A person shall be considered 'voluntarily impover-

ished' whenever the parent has made the free and conscious choice, *not compelled by factors beyond his or her control,* to render himself or herself without adequate means." (Emphasis supplied.)

*Wills v. Jones,* 340 Md. 480, 494–95, 667 A.2d 331 (1995), however, rejected the above definition in *John O.* as "too narrow." There, the Court of Appeals made it clear that the intent in question is whether the parent or spouse intentionally became impoverished, for any reason, as opposed to whether the parent or spouse became impoverished with the intent of avoiding support payments. In *Wills,* the father was incarcerated. He had no assets and his income dropped to $20 per month. The circuit court granted the father's motion to stay enforcement of child support obligation, finding that his incarceration was not voluntary. The Court of Appeals affirmed and stated:

> [W]e hold that a prisoner is only "voluntarily impoverished" as a result of incarceration if the crime leading to incarceration was committed with the intention of becoming incarcerated or otherwise impoverished.

*Id.* at 497, 667 A.2d 331

Prior cases in which this Court has had to review a trial court's determination of voluntary impoverishment presented various situations where this Court, with the exception of *Wills* and one further case discussed below, uniformly upheld the trial court's finding that a parent or spouse either had, or had not, voluntarily impoverished him or herself.

The one prior case other than *Wills* where this Court found an abuse of discretion in the trial court was *Moore v. Tseronis,* 106 Md.App. 275, 664 A.2d 427 (1995). There, the parent's change of residence from Baltimore City to his new wife's original home in Garrett County resulted in a considerable reduction of his income. There was no evidence that a comparable job to the one he held in Baltimore City was available in Garrett County. This Court found that the parent's commuting 160 miles a day to work as many hours as

possible at the kind of job he was trained to do, hardly indicated an intention to impoverish himself.

Turning to the present case, we keep the issue of the determination of the appellant's voluntary impoverishment as simple as possible, but no simpler, and ask whether his current impoverishment is intentional, that is, by his own choice, of his own free will?

The trial court found:

The defendant in this case has been unemployed since January. The reason for his unemployment apparently is within his own hands and his own doing, so to some degree the immaturity now has been compounded with actions that are less than appropriate and show some poor judgment. I didn't hear testimony as to any very strenuous efforts to get a job. I hope for his sake that he is very successful with Weichert. I would hope, too, that the people at Weichert are being candid with him in terms of the risk involved with real estate. This may be a very good market and I hope that he is able to do very well but it is a market that is peculiarly susceptible to demand and when the demand falls off so does the business.

. . .

You caused your own discharge from work and the reason you are not eligible even for unemployment compensation is because of your conduct.

■ To determine if a parent is "voluntarily impoverished," the trial court should consider several factors, including:

1. his or her current physical condition;

2. his or her respective level of education;

3. the timing of any change in employment or financial circumstances relative to the divorce proceedings;

4. the relationship of the parties prior to the divorce proceedings;

5. his or her efforts to find and retain employment;

6. his or her efforts to secure retraining if that is needed;

7. whether he or she has ever withheld support;

8. his or her past work history;

9. the area in which the parties live and the status of the job market there; and

10. any other considerations presented by either party.

*Goldberger v. Goldberger, supra,* 96 Md.App. at 327, 624 A.2d 1328 (quoting *Jane O.,* 90 Md.App. at 422, 601 A.2d 149).

The contention that the appellant's unemployment should be considered "voluntary" because he made the free and conscious choice to falsify records stretches the meaning of the word intentional beyond its acceptable boundaries. The appellant's unemployment can only be said to be "voluntary" if it was an intended result of his conduct.

We find the present case similar to *Wills.* Although here there is no incarceration, there is simply no evidence that the appellant's conduct, which led to his discharge, was committed with the intention of becoming unemployed or otherwise impoverished. With this factor removed from the equation, we are left with the appellant's unemployment since January to the date of the hearing, approximately four months. During that time, he was attempting to become a real estate agent. This factor alone is insufficient to justify voluntarily·impoverished. Clearly, the appellant's intent that led to his being discharged was not to avoid child support but his cupidity.

## CONCLUSION

The trial court's judgment awarding custody to the appellee is affirmed. The trial court's finding that the appellant voluntarily impoverished himself is reversed, and the trial court's award of child support is stricken.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART; THE MATTER IS REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID ONE HALF BY APPELLANT AND ONE HALF BY APPELLEE.**